**In re Delray James COLVIN, Betty Jo Colvin, Debtors.**

**Bankruptcy No. 82A–00429.**

United States Bankruptcy Court,
D. Utah, C.D.

Jan. 29, 1986.

Richard Bojanowski, Salt Lake City, Utah, for debtors.

Thomas C. Sturdy and Michael Katz, Garret & Sturdy, Salt Lake City, Utah, for creditor Deseret Federal Sav. & Loan Assn.

Judith A. Boulden, Boulden & Gillman, Salt Lake City, Utah, for herself as trustee.

## MEMORANDUM OPINION

JOHN H. ALLEN, Bankruptcy Judge.

### CASE SUMMARY

This case is before the Court on the creditor's motion to terminate the automatic stay as to the debtors' home for failure to pay its allowed claim for attorneys' fees in the amount of $6,475.00. The Court is called upon to decide *when* the debtors are required to pay this claim in the context of a Chapter 13 repayment plan. For the reasons hereinafter set forth, the Court concludes that the claim for attorneys' fees must be cured through the debtors' Chapter 13 plan. However, the motion is denied and the debtors shall be afforded an opportunity to modify their plan in accordance with this decision.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 22, 1980, Delray James and Betty Jo Colvin ("debtors") filed a petition for relief under Chapter 7 of the Bankruptcy Code. Three months later, they received a discharge pursuant to Section 727(a). On April 7, 1981, the same debtors filed a petition for relief, this time under Chapter 13, in an effort to save their home from foreclosure. The latter case, however, was dismissed because it was filed too soon after the debtors' Chapter 7 discharge. The dismissal was affirmed on appeal. Nevertheless, the debtors were allowed to reopen and convert their Chapter 7 case to a case under Chapter 13. At the time of conversion, the debtors were in default to United Savings & Loan Association ("United Savings"), holder of the first lien on their home, and to Deseret Federal Savings & Loan Association ("Deseret Federal"), the second lienholder. United Savings and Deseret Federal filed proofs of claims in the amounts of $34,000 and $22,676.76, which respectively represented the unpaid accelerated balance, accrued interest, and costs due. The undisputed value of the debtors' principal residence was $68,000.

Deseret Federal also filed an application for attorneys' fees and costs in the amount of $6,425.00, claiming the fees were incurred in protecting its interest in the debtors' home. The legal services rendered involved work related to the pre-petition trust deed foreclosure of the debtors' home, the debtors' original Chapter 7 case, the debtors' Chapter 13 case which was subsequently dismissed, and the reopening

and conversion of the original Chapter 7 case to a case under Chapter 13.

The debtors' Chapter 13 plan proposed to pay $160 per month for five years to cure the existing defaults on the first and second mortgages and to pay a twenty-five percent dividend to unsecured creditors. The debtors were also obligated to maintain the regular mortgage payments to United Savings and Deseret Federal as they became due.

On January 12, 1983, at a hearing before visiting Judge Harold L. Mai, the debtors' Chapter 13 plan was confirmed. The Court, however, reserved for later determination the question of whether Deseret Federal was entitled to $6,425.00 in attorneys' fees and costs. On this issue, the Court later ruled that Deseret Federal was entitled only to prepetition fees (approximately $600).

On appeal to the United States District Court for the District of Utah, Judge David K. Winder ruled that pursuant to 11 U.S.C. § 506(b) an oversecured creditor in a Chapter 13 case was entitled to postpetition attorneys' fees and costs to the extent permitted by the agreement between the parties. On remand, the bankruptcy court was to determine whether the underlying agreement provided for fees and costs and whether they were reasonable.

On December 29, 1983, this Court entered an order allowing Deseret Federal's attorneys' fees and costs in the amount of $6,425.00, pursuant to Section 506(b) of the Bankruptcy Code. The fees were to be added to the unpaid obligation. However, Deseret Federal has been neither successful in obtaining payment directly from the debtors, nor has the plan been modified to include this claim.

Deseret Federal now asks the Court to terminate the automatic stay as to the debtors' home for failure to to pay its claim for attorneys' fees. At the hearing on this matter, no testimony was presented by either party, but the material facts set forth herein are not in dispute as they appear from the record in this case.

## ISSUE

The sole issue presented for determination is when attorneys' fees, allowed under 11 U.S.C. § 506(b), are to be paid in the context of a Chapter 13 repayment plan.

## DISCUSSION

Under the so-called "American Rule," each litigant bears the cost of its own attorneys' fees absent a statute or contract to the contrary. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983); *Summit Valley Industries, Inc. v. Local 112, United Brotherhood of Carpenters*, 456 U.S. 717, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *F.D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Likewise, attorneys' fees are not generally recoverable in bankruptcy cases absent an express statutory provision. *In re Fox*, 725 F.2d 661, 11 B.C.D. 943 (11th Cir.1984). A narrow exception to the "American Rule" is found in Section 506(b) of the Bankruptcy Code, which provides:

> (b) To the extent that an allowed secured claim is secured by property the value of which after any recovery under subsection (c) of this section is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim and any reasonable fees, costs or charges provided under the agreement under which such claim arose. 11 U.S.C. § 506(b).

Therefore, attorneys' fees and costs can be recovered from the debtor's estate if the secured creditor can demonstrate that the value of the collateral securing its claim exceeds the fees requested, the underlying agreement provides for payment of such fees and costs, and the fees sought are reasonable in amount. *In re David N. Rausch, Inc.*, 41 B.R. 833 (Bkrtcy.D.S.D. 1984); *In re Rutherford*, 28 B.R. 899 (Bkrtcy.N.D.Ill.1983); *In re Masnorth*

*Corp.*, 28 B.R. 892, 10 B.C.D. 553 (Bkrtcy. N.D.Ga.1983). Fees and costs allowed under this section are added to the value of the creditor's allowed secured claim. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 356 (1977), 1978 U.S.Code Cong. & Admin. News, p. 6312. *See e.g. In re Calzaretta,* 35 B.R. 92, 94 (Bkrtcy.N.D.Ill.E.D.1983); *In re Marino,* 23 B.R. 321, 7 C.B.C.2d 182 (Bkrtcy.W.D.Mich.1982); *In re Dye Master Realty,* 15 B.R. 932, 936 (Bkrtcy.W.D.N.C. 1981); *In re Klein,* 10 B.R. 657, 4 C.B.C.2d 412, 7 B.C.D. 668 (Bkrtcy.E.D.N.Y.1981). This concept is not a departure from prior case law, although the former Bankruptcy Act contained no express provision allowing secured creditors to add additional charges to their claims. *See Vanston Bondholders Protection Comm. v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946); *Sexton v. Dreyfus,* 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911); *In re Magnus Harmonica Corp.,* 262 F.2d 515 (3rd Cir.1958). In this case, Deseret Federal's secured claim includes the outstanding obligation on the second lien of $22,676.76, and attorneys' fees and costs of $6,425.00. However, Section 506(b) provides for only the allowance, but does not specify the time or manner of payment. *See* 3 COLLIER ON BANKRUPTCY ¶ 506.05 at 506–40 (15th ed. 1985); *In re Simpkins,* 16 B.R. 956, 965, 6 C.B.C.2d 1081, 1091 (Bkrtcy.E. D.Tenn.1982). The manner of payment is dealt with elsewhere in the Code.

■ Generally, in a Chapter 13 case the allowed secured claim of a creditor whose security interest is in the debtor's principal residence consists of two parts: (1) an arrearage claim resulting from the debtor's default in payments; and (2) the claim for the balance due on the mortgage. *In re Thorne,* 34 B.R. 428, 430 (Bkrtcy.E.D.Tenn. 1983). For a Chapter 13 debtor to keep his home, Section 1322(b) of the Bankruptcy Code requires the following:

(b) ... the plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

\* \* \* \* \* \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

\* \* \* \* \* \*

Section 1322(b)(2) preserves the right to receive regular payments as required by the terms of the contract. Therefore, a debtor must maintain regular payments on the decelerated portion of the creditor's allowed secured claim. The special protection of this section requires that the regular payments be made concurrently with payment of administrative expenses. *In re Simpkins,* 16 B.R. at 968. Section 1322(b)(2) also preserves the right to receive those additional expenses arising from the default in payments if provided for by the contract. *In re Christian,* 35 B.R. 229, 232 (Bkrtcy.N.D.Ga.1983); *In re Simpkins,* 16 B.R. at 964, 965.

Paragraph 19 of the Trust Deed Agreement between the parties states:

19. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in the Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust, the Note and notes securing Future Advances, if any, had no acceleration occurred; (b) Borrower cures

all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower, contained in this Deed of Trust and in enforcing Lender's and Trustee's remedies as provided in paragraph 18 hereof, including, but not limited to, reasonable attorney's fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

■ According to the terms of the parties' agreement, to cure and reinstate, the debtors must also pay Deseret Federal's reasonable attorneys' fees. Section 1322 (b)(5) allows debtors to cure their failure to perform obligations on long term debt. *In re Fontaine*, 27 B.R. 614, 10 B.C.D. 204, 8 C.B.C.2d 1293 (Bkrtcy.App.Pan. 9th Cir. 1982). However, the case law has not been in agreement as to the limits of debtors' power to cure a default. Some courts have held that where a mortgage by its terms permits the creditor to accelerate the debt before filing, Section 1322(b)(5) does not apply. This view is predicated upon the principal that since acceleration caused the obligation to become immediately due, the maturity date of the last payment does not extend past the date for the last payment under the plan. Therefore, the entire amount must be paid under the plan. To hold otherwise, would modify the mortgagee's rights in violation of subsection (b)(2). *See, e.g., In re Williams*, 11 B.R. 504, 7 B.C.D. 946, 4 B.C.D.2d 1028, (Bkrtcy.S.D. Tex.1981); *In re LaPaglia*, 8 B.R. 937, 7 B.C.D. 333, 3 C.B.C.2d 717, (Bkrtcy.E.D.N. Y.1981). But the majority of cases have held that the power to "cure" contained in Section 1322(b)(5) includes the power to decelerate the accelerated mortgage debt and reinstate the original mortgage payment schedule. *See, e.g., In re Taddeo*, 685 F.2d 24 (2nd Cir.1982); *In re Acevedo*, 26 B.R. 994, 4 C.B.C.2d 178 (Bkrtcy.E.D.N. Y.1982); *In re Briggs*, 25 B.R. 317 (Bkrtcy. D.N.D.1982); *In re Davis*, 16 B.R. 473, 5 C.B.C.2d 606 (Bkrtcy.D.Kan.1981). In almost every Chapter 13 case filed by a homeowner debtor, the mortgage debt has been accelerated. By prohibiting a debtor from curing defaults on accelerated loans, the congressional intent and rehabilitative purpose behind Chapter 13 would be defeated. The curing of defaults under this section is not considered a modification of the mortgage lienholder's rights. *In re Taddeo*, 685 F.2d at 27. This Court adopts the majority position and allows the debtors in the present case to cure the default through their Chapter 13 plan, decelerate Deseret Federal's accelerated second lien, and reinstate the original payment terms.

## CONCLUSION

■ Section 1322(b)(2) allows the curing of defaults to place parties in the position they would have been in if the defaults had not occurred. Upon the cure, no damages arising out of the breach of the lien agreement can exist. The terms of the parties' lien agreement provided that the debtors must pay all attorneys' fees in order to cure and reinstate the agreement. Section 1322(b)(2) requires that the rights of mortgage lienholders be preserved. Therefore, this Court is of the opinion that in order to place the parties in their pre-default condition and to preserve the terms of the parties' lien agreement, the arrearage claim of Deseret Federal must include its claim for attorneys' fees and be treated through the debtors' Chapter 13 plan. Although the foregoing decision renders the debtor's Chapter 13 plan as previously confirmed unfeasible, the requirements of Section 506(b) and Section 1322(b)(2) cannot be disregarded in the interest of feasibility. However, the Court will not grant Deseret Federal's Motion for Relief without giving the debtors an opportunity to modify their plan in accordance with this decision. Ac-

cordingly, the debtors are allowed twenty days from this date to move to modify their plan in accordance with this decision. If such motion is not filed, the Court will grant relief from the stay upon ex parte motion of Deseret Federal.