In the Matter of Debra Lynn LaLONDE, Debtor.

Bankruptcy No. 3-86-00173.

United States Bankruptcy Court, S.D. Ohio, W.D.

Sept. 23, 1986.

George W. Ledford, Englewood, Ohio, Chapter 13 Trustee.

Edward M. Taylor, Jr., Taylor & Taylor, Dayton, Ohio, for Milton Federal Sav. and Loan Assn.

Lloyd D. Cohen, Dayton, Ohio, for debtor.

## DECISION DETERMINING AMOUNT OF ALLOWED SECURED CLAIM AND OTHER MATTERS

THOMAS F. WALDRON, Bankruptcy Judge.

This is a case arising under 28 U.S.C. § 1334(a) and having been referred to this court is determined to be a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O) in which the Chapter 13 Trustee and the attorney for Milton Federal Savings and Loan Association (hereinafter Milton), holder of the first mortgage on the principal residence of the debtor, Debra Lynn La-Londe (hereinafter LaLonde), request an order of the court determining the total amount of arrearage and the payment necessary to cure any arrearage so that a plan of the debtor may be confirmed.

The matter is before the court on Milton's objection to confirmation; Milton's proposed agreed entry and memorandum in support thereof; the debtor's modification to her plan; the Chapter 13 Trustee's objection to the proposed agreed entry and modification and the arguments of the parties at the hearing on April 7, 1986; Milton's April 14, 1986 letter setting forth the amounts owed on the mortgage; and the subsequently filed briefs of Milton and the Chapter 13 Trustee.

### I. FACTS

On September 30, 1980, the debtor and her former husband (who is not a party to these proceedings) executed a mortgage note and open end mortgage with Milton under which the LaLondes were to pay Milton $257.16 a month for 30 years at 12% interest a year. The note provided that:

Should any of said payments become due and remain unpaid for the period of sixty days, or should any of the agreements, covenants or conditions in the mortgage given by the makers to secure the payments of this note be broken, then, without demand or notice, the entire balance of principal and accrued interest shall immediately become due and payable, at

the election of the holder hereof and thereafter bear interest at the rate of 2% per annum higher than the rate set forth above, computed from the date of breach or the due date of said delinquent installment. Notice of such election is hereby waived. The failure to exercise such election shall not constitute a waiver of the right to exercise it at any later time. Presentment, protest and notice are hereby waived.

The mortgage further provided that:

FIFTH: That upon failure of the mortgagor to pay taxes, assessments, insurance premiums and other charges against said property, the mortgagee is hereby authorized and empowered for its better security and at its option, to pay said taxes, assessments, and insurance premiums, or any of them, and all sums so expended shall be secured by this mortgage and shall be payable by mortgagors on demand together with interest at the rate of 2% per annum higher than the highest rate of interest set forth in the note or notes which this mortgage secures.

The record indicates that the debtor's last payment under the mortgage was made on October 31, 1984. Pursuant to the terms of the note, a resolution of the board of directors of Milton was passed, retroactive to January 1, 1985, increasing the rate of interest by 2% from the original 12% rate to a default rate of 14% per year on the entire balance of principal and accrued interest.

An order of foreclosure was entered on November 18, 1985, in the Common Pleas Court of Montgomery County, Ohio, Case No. 85-2221. A sheriff's sale was scheduled for January 24, 1986, but was stayed as a result of the debtor's Chapter 13 petition filed January 23, 1986.

The debtor's plan, filed the same day, proposed to pay $395 a month to the trustee for 60 months and provided for a 100% dividend to unsecured creditors. The plan further provided for the monthly payment of $257.16 called for under the original terms of the mortgage note (12% interest), plus $105 a month, which included interest

at 14%, to cure a twelve month arrearage of $4,628. A professional appraisal in the file stated the fair market value of the real estate was $53,000 as of January 31, 1986.

On February 21, 1986, Milton filed a real estate mortgage proof of claim listing as of January 31, 1986: a principal balance of $29,130.21 and an arrearage of $4,657.48, both "with interest at the rate of 14% per annum, computed monthly on the unpaid balance of principal and accrued interest from 1-23-86"; court costs of $406.66 and title costs of $85, for a total arrearage of $5,149.14.

On March 10, 1986, Milton filed an objection to confirmation of the debtor's plan arguing that the proposed $105 a month payment would not pay off the total arrearage claimed within 60 months, that the debtor neglected to include the costs of the foreclosure action, and that the plan did not provide for making up the deficiency of interest owed from January 31, 1986 to March 4, 1986, the date of the first payment to be made under the plan. Milton, therefore, claimed the arrearage totalled $5,488.99, and would require 60 monthly payments of $127.72 each. On March 18, 1986, the debtor and Milton signed an agreed order and on April 29, 1986, in accordance with its terms, the debtor filed a Modification of the Plan agreeing to the figures claimed by Milton. In return, Milton agreed to withdraw its objection to confirmation; however, the Chapter 13 Trustee objected to the terms of the agreed order and the confirmation of the modification to the debtor's plan and the parties agreed to submit briefs on their respective positions.

## II. ISSUES PRESENTED

What is the total arrearage owed by the debtor to Milton; at what interest rate, on what base amount, for what period is interest to be computed; and, if confirmation of the debtor's modified plan is barred by 11 U.S.C. § 1325(a)(5)(B)(ii), can the debtor's original plan be confirmed over Milton's objection?

## III. ARGUMENTS OF THE PARTIES

The Chapter 13 Trustee's objection to the agreed entry and modified plan is based on 11 U.S.C. § 1325(a)(5)(B)(ii). His position is that the debtor is liable for 15 months of missed payments (November 1984—January 1986) at $257.16 a month, resulting in a mortgage arrearage of $3,857.40 (not $4,657.48, plus costs as per the proof of claim). The trustee argues that interest should be allowed on the mortgage arrearage claim of $3,857.40 at the rate of 12% interest, the underlying pre-default contract rate, citing *Cardinal Federal Savings & Loan Association v. Colegrove (In re Colegrove )*, 771 F.2d 119, 123 (6th Cir. 1985), calculated from the date of confirmation of the plan, to be paid at $105 a month which would complete payment of the arrearage over 46 months. The trustee proposes that the monthly mortgage payments to be made under the plan be calculated beginning with the month following the month of the petition (*i.e.*, here, the petition was filed on January 23, 1986—the first payment was not due until February 23, 1986), 11 U.S.C. § 1326(a)(1).

Milton argues that *In re Colegrove* is inapplicable, because in that case the contract between the parties did not provide for interest on an arrearage, and to apply *Colegrove* to the present situation where the contract provides for interest would be an impermissible modification of the rights of a holder of a secured claim whose only security is a security interest in the debtor's principal residence. 11 U.S.C. § 1322(b)(2). Milton further argues that the plan should be so structured that at its end the balance should be the same as if all payments had been made on time. To compute only the payment amount due under the mortgage times the number of missed months "without regard to interest on either unpaid principal or unpaid interest, and with interest only starting on confirmation, without including missed payments since filing of the petition," as proposed by the trustee, Milton argues, could not have this effect. Milton notes that in a Chapter 7 bankruptcy, as an oversecured creditor, it would receive the full amount due, plus post-petition interest, upon sale of the property. Milton further submits that it is entitled, in addition to the amounts shown on its proof of claim, to $210 (no interest claimed) for advancing insurance premiums on March 31, 1986.

## IV. OPINION OF THE COURT

In a Chapter 13 case where the allowed secured claim of a creditor whose only security is a security interest in the debtor's principal residence, the claim consists of two parts:

(1) an arrearage claim resulting from the debtor's default in payments; and (2) the claim for the balance due on the mortgage.

. . . .

Section 1322(b)(2) preserves the right to receive regular payments as required by the terms of the contract. Therefore, a debtor must maintain regular payments on the decelerated portion of the creditor's allowed secured claim.

*In re Colvin,* 57 B.R. 299, 302 (Bankr.D. Utah 1986). At issue is the arrearage claim only, because the debtor is obligated to continue the payments of $257.16 a month required by the terms of the parties' original agreement.

Because Milton is an oversecured creditor, 11 U.S.C. § 506(b) applies. It provides that:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Additionally, 11 U.S.C. § 1325(a) provides that a court shall confirm a plan if:

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder;

The Sixth Circuit Court of Appeals in *In re Colegrove*, 771 F.2d at 122, addressed the interplay between these two sections, although in that case it was for the purpose of determining whether interest should be allowed on a mortgage arrearage under a Chapter 13 plan where the contract itself did not provide for interest on arrearages and the mortgagee held an oversecured claim. It concluded that interest was allowable because "interest" is merely incident to the "cure" under 11 U.S.C. § 1322(b)(5), which is excepted from the prohibition against modification of claims held by those with a security interest in the debtor's principal residence under § 1322(b)(2).

The majority of bankruptcy courts to address the issue have held in favor of allowing interest in this context. *In re Stratton*, 30 B.R. 44, 46 (Bankr.W.D. Mich.1983) ("interest is required here under § 1325(a)(5)(B) of the Bankruptcy Code to give the creditor the present value of his money"); *In re Einspahr*, 30 B.R. 356 (Bankr.E.D.Pa.1983) ("the courts agree that, in order to provide the secured creditor with the value of his secured claim 'as of the effective date of the plan,' the debtor must pay interest on that claim"); *In re Hibbert*, 14 B.R. 891, 894 (Bankr.E.D.N.Y.1981) ("for the Debtors to cure their default, they must presently tender the full amount due; or, in the alternative, tender a greater amount in deferred payments such that the total of such deferred payments is equivalent to receipt of [the total amount due] today"); *see also In re Evans*, 20 B.R. 175 (Bankr.E.D.Pa.1982); *In re Frey*, 34 B.R. 607 (Bankr.M.D.Pa.1983).

*In re Colegrove* at 122.

Prior to addressing the rate to be applied, it should be noted that the allowable interest in *Colegrove* was computed on the total allowed arrearage itself, not as Milton requests, on the total unpaid balance of the remaining principal. While cognizant of the various significant differences between Chapter 11 and Chapter 13, court decisions have noted some similarities in the "cure and reinstatement" provisions in each chapter and the concepts expressed in *Colegrove* are consistent with cases involving Chapter 11 plans which view the allowance of interest on the accelerated principal as a continuing integral component of the default provisions of the original contract that cannot be permitted in a Chapter 11 (or Chapter 13) case since they are inconsistent with the reinstatement and cure based on deacceleration intended by Congress. *Di Pierro v. Taddeo (In re Taddeo )*, 685 F.2d 24, 27–28 (2nd Cir.1982); *see e.g., Levy v. Forest Hills Associates (In re Forest Hills Associates )*, 40 B.R. 410, 11 B.C.D. 1145, 1147 (Bankr.S.D.N.Y.1984) ("It follows logically that if there has been no default and acceleration, there can be no liability for interest on the accelerated debt.").

■ The Sixth Circuit held that the most equitable rate of interest to be paid on the allowed arrearage would be "the prevailing market rate of interest on similar types of secured loans at the time of allowance of the creditors claim and the confirmation of the plan in bankruptcy with a *maximum limitation* on such rate to be the underlying contract rate of interest." (footnote omitted; emphasis in original). *In re Colegrove* at 123. *See also In re Minick*, 63 B.R. 440, 14 B.C.D. 921, 925–26 (Bankr.D. D.C.1986).

■ Finally, the question of how many payments are to be included in the amount of arrearages must be addressed. Only those payments of principal and original interest—at 12% (not the default rate of 14%)—in arrears as of the date of the debt-

or's petition can be included. The parties here indicate that 15 payments of $257.16 each were in arrears. Although Milton is an oversecured creditor, in order to be considered a component of the allowed claim, § 506(b) requires that any reasonable fees, costs or charges be "provided for *under the agreement* under which such claim arose" (emphasis added). *In re Colvin* at 301. The agreement before the court, however, does not provide for the recovery of "Court Costs $406.66" or "Title $85" listed on Milton's proof of claim. The agreement does provide for recovery of insurance advances ($210) and the total arrearages shall include the insurance premiums advanced by Milton.

To allow the total arrearage claim to be expanded into the period following the filing of the petition would defeat the purposes of the automatic stay under 11 U.S.C. § 362(a), and to grant additional interest on those payments due after the filing that remain unpaid until the initial distribution following confirmation based on any administrative delay through the Chapter 13 office, not caused by the debtor, would be inequitable. "The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate." *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946) (citation omitted).

Accordingly, this court holds that the total arrearage owed by the debtor to Milton is to consist of the 15 monthly payments of $257.16 per month which represents principal and interest at the pre-default rate (12%) due under the contract until the date of the debtor's petition, plus the advanced insurance premiums of $210. As of the confirmation date of the plan, this allowed secured claim totaling $4,067.40 is to receive interest at the market rate on similar types of loans at the rate prevailing on the date of the confirmation with a maximum limitation being the maximum contract rate of 14%. The trustee's objection to the debtor's modified plan is SUSTAINED and Milton's objection to the debtor's plan filed January 23, 1986 is OVERRULED. To clarify the record in these proceedings, if the debtor files a written request to confirm the plan filed January 23, 1986, as modified by this decision establishing the amount of the arrearage and terms for its payment, the court will enter an order confirming such a plan without further hearing.

An order consistent with this decision is simultaneously entered.

SO ORDERED.