**In re Frederick W. PARKER and Jackie M. Parker, Debtors.**

**Bankruptcy No. 84–01003A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 30, 1985.

Albert J. DeCusati, Atlanta, Ga., Stuzin & Camner, Miami, Fla., for Federal Nat. Mortg. Assoc.

Rose H. Staples, Paul C. Parker & Associates, Decatur, Ga., for debtors.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the objection to confirmation and motion to dismiss the above-referenced Chapter 13 proceeding filed by the Federal National Mortgage Association ("FNMA"). Confirmation of this case has been held in abeyance pending a ruling on the issues raised by FNMA. The facts are not in dispute, and briefs have been filed by the debtors and FNMA.

The debtors have proposed to cure and reinstate through their Chapter 13 plan a purchase-money note in favor of FNMA secured by a security deed on the debtors' principal residence. The concept of such a cure and reinstatement is well-established in the law. *Grubbs v. Houston First American Savings Association*, 730 F.2d

236 (5th Cir.1984); *In re Taddeo*, 685 F.2d 24 (2d Cir.1982); *In re Carr*, 36 B.R. 381 (Bkrtcy.N.D.Ga.1983). The instant litigation involves a negative amortization note which contains several provisions that cloud the basic issue before the Court. Specifically, the note calls for graduated payments over the first five years of the note, payment of a monthly escrow amount that is subject to fluctuation, and payment of a full (non-graduated) monthly amount in the event of a default. The questions before the Court are: (1) Whether current payments on the note may be made at the graduated rates or the full payment rate; (2) Whether the debtors committed a post-petition default by paying less than the full payment rate; and (3) Whether the negative amortization aspect of the note renders FNMA's security interest inadequately protected.

The purchase-money note was executed by the debtors on January 28, 1983. The debtors granted to FNMA a security deed in their principal residence located at 106 Huntwood Drive, Smyrna, Georgia to secure the purchase-money note. The debtors failed to make payments which became due in January, February, and March of 1984. On March 5, 1984, the debtors filed for relief under Chapter 13 of the Bankruptcy Code.

The graduated monthly payment schedule for the first five years of the note is as follows:

Year 1 (March 1, 1983 through February 1, 1984): $489.87

Year 2 (March 1, 1984 through February 1, 1985): $526.61

Year 3 (March 1, 1985 through February 1, 1986): $566.11

Year 4 (March 1, 1986 through February 1, 1987): $608.56

Year 5 (March 1, 1987 through February 1, 1988): $654.21

In addition to making payments in monthly installments at the applicable graduated rate, the debtors must make a monthly escrow payment. For the 1984 calendar year, the amount of this monthly escrow payment was $86.13. Therefore, had there

been no default, the debtors would have made monthly payments to FNMA throughout 1984 in the amount of $612.74. This figure is reached by adding the second year graduated rate ($526.61) to the escrow payment ($86.13).

The note also sets forth a monthly installment rate at which the debtors could repay the amount originally borrowed without negative amortization. This amount, $634.33, is denoted the "full payment amount." In the event of default, the note provides that the debtors must pay the "full payment amount" rather than the applicable graduated rate. "Default" in the note is defined to mean failure of the debtors to pay the "full amount of each monthly payment on the date it is due." When the monthly escrow payment is added to the "full payment amount," post-default payments for the 1984 calendar must total $720.46.

FNMA contends that the failure of the debtors to make the first three monthly payments in 1984 constituted a default under the note. The debtors do not dispute that contention. The purpose for their bankruptcy filing was to cure the three-month arrearage and reinstate monthly payments under the note. FNMA argues that the debtors must pay $720.46 per month in order to remain current under the note. The debtors take the position that cure and reinstatement entitles them to resume making payments at the applicable graduated rate, rather than at the "full payment rate." To that end, the debtors have been making monthly payments through 1984 in the amount of $612.74.

The Court has been provided with no authority dealing specifically with the issue of graduated payments versus full payments when dealing with the cure and reinstatement of a negative amortization note. Accordingly, the Court turns to the fundamental concept of cure and reinstatement as described by the Second Circuit Court of Appeals in *In re Taddeo*, 685 F.2d at 26 (emphasis added):

A default is an event in the debtor-creditor relationship which triggers certain

consequences—here acceleration. *Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified.* This is the concept of "cure" used throughout the Bankruptcy Code ... [T]he cure need address only the individual event of default, *thereby repealing the contractual consequences.*

This Court fully embraced the above language in *In re Carr,* 36 B.R. at 382. Similarly, the Fifth Circuit Court of Appeals quoted from the foregoing excerpt in holding that *Taddeo* was correctly decided. *Grubbs v. Houston First American Savings Association,* 730 F.2d at 241, 242.

■ Applying the rationale that the debtors are entitled to repeal the contractual consequences of their default, the debtors may propose a confirmable plan in good faith which calls for payments according to the graduated installment schedule. Therefore, the debtors are not obligated to pay the "full payment amount" in order to cure and reinstate their mortgage.

■ The debtors in fact made payments to FNMA in the amount of $576.00 for April, May, and June of 1984. FNMA argues that the debtors committed a post-petition default by tendering monthly payments which were less than either the applicable graduated rate or the "full payment amount." Technically, FNMA has a valid position. However, the debtors paid the amount which was set forth in their loan repayment coupon book, in reasonable reliance that the coupon book accurately stated the amount due. The rise from $576.00 per month to $612.74 per month was apparently caused by an increase in the escrow amount for 1984. At the confirmation hearing, the debtors paid the total difference ($107.22) for the months April, May, and June of 1984 to FNMA by American Express Money Order. Accordingly, the debtors have corrected their technical post-petition default.[1]

Finally, FNMA contends that it is not adequately protected under a plan which would allow for negative amortization during the first five years of the note. The note is structured so that deferred interest from the graduated payment is added to the original principal balance at the end of five years. This new principal balance is then amortized over the remaining duration of the note in approximately equal monthly installments. FNMA suggests, without evidentiary support, that there is little or no equity in the debtors' residence, and that the increase in the principal indebtedness over the negative amortization period will erode their security in the residence. While this argument has considerable merit, the Court does not have a sufficient evidentiary basis on which to decide the issue of adequate protection.

■ In conclusion, the debtors are arguably entitled to cure and reinstate their note in accordance with the graduated payment schedule as if there had been no pre-petition default. On the other hand, the right to cure and reinstate does not vitiate the obligation to afford a secured party adequate protection of its interest in collateral. The Court shall hold an evidentiary hearing to determine whether the plan to make payments under the graduated schedule—as otherwise permitted by the Bankruptcy Code—runs afoul of the duty to provide adequate protection. The fact that the debtors fell short in making their first three post-petition installments to FNMA is of no consequence in these proceedings.

Notice is hereby served that a hearing on the question of adequate protection of FNMA's interest in the debtors' principal residence shall be held on the 6th day of March, 1985, at 10:30 A.M., in Courtroom 1705 United States Courthouse, 75 Spring

---

1. Although the Code prohibits the *plan* from undertaking to cure a post-petition default governed by § 1322(b)(2) (claim secured by a security interest in real property that is the debtor's principal residence), the Court may, in the exercise of its equitable discretion, give the debtors time in which to bring post-petition arrearages current. *See* 11 U.S.C. § 1322(b)(5); *In re Lovett,* Case No. 82–03203A, (Bkrtcy.N.D.Ga., December 12, 1983).

Street, S.W., Atlanta, Georgia. Pending a ruling on this issue, the Court provisionally confirms the debtors' plan, and the Chapter 13 Trustee is authorized to commence making disbursements under the plan. The debtors are directed to continue making payments under their plan.

IT IS SO ORDERED.