**In re Lillie Bell MINICK, Debtor.**

**Bankruptcy No. 85–00038.**

United States Bankruptcy Court,
District of Columbia.

July 24, 1986.

Paul R. Kramer, Baltimore, Md., for debtor.

Fritz Schneider, Ross, Marsh & Foster, Bethesda, Md., for Manhattan Life Ins. Co.

## OPINION

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

This Opinion explains why this Court has confirmed the Debtor's proposed Chapter 13 Plan notwithstanding objections raised by Manhattan Life Insurance Co. ("Manhattan").[1]

I. Manhattan's first argument is that this Court, as a precondition to confirming the Debtor's Plan, should first have resolved (a) Manhattan's motion to dismiss this case or convert it to a Chapter 7 case and (b) the disputes between Manhattan and the Debtor as to the amount of pre-petition arrears and as to post-petition payments.

(a) Manhattan's argument to the District Court that this Court should have promptly resolved Manhattan's motion to dismiss or convert is inconsistent with Manhattan's position before this Court. Subsequent to filing its notice of appeal, Manhattan requested a stay of all further proceedings in this Court pending the appeal. Therefore, Manhattan asked that this Court *not* hold a prompt hearing on that motion, but instead defer ruling on it until after disposition of the appeal. Manhattan could obtain the complete relief it seeks in District Court in this regard simply by requesting that Court to remand the matter to this Court to hold a hearing.

(b) Manhattan's argument that the precise amount of Manhattan's claim must be judicially determined as a precondition to confirmation is based on a misreading of (i) the one case and (ii) the one statutory provision that Manhattan cites for that proposition:

■ (i) *In re Webb*, 29 B.R. 280, 286 (Bankr.E.D.N.Y.1983), in stating that "as of the confirmation date, section 506(b) ... fix[es] the total secured claim," means simply that, for purposes of § 506(b), the value of collateral (and hence the amount of the secured as distinguished from the unsecured claim) is to be determined "as of" the confirmation date. Thus, if a debtor's house burns down on the day *before* the confirmation date, the value of the collateral and hence the amount of the secured claim will be entirely different than if the house burns down on the day *after* the confirmation date. That is all *Webb* means. It most certainly does not mean that the amount of the secured claim must be "fixed" in the sense of being determined by the court not only "as of" the confirmation date but also in all cases "on" (or before) that precise date.

■ (ii) Similarly, § 1327(a), which states that "[t]he provisions of a confirmed plan bind the debtor and each creditor ...", does not say and certainly does not mean that something that is not a "provision of a confirmed plan"—that is, the precise amount of each creditor's claim—is "binding" when it has not yet been determined.

Manhattan's argument in this regard betrays a lack of understanding both of the basis for this Court's ruling in this particular case and of the way bankruptcy cases customarily proceed. This Court confirmed the Debtor's Plan on the basis of a "worst-case scenario"—that is, this Court concluded that, even if the Debtor owed all that Manhattan claimed, rather than the lesser amount the Debtor acknowledged, and even after adding in post-petition arrears, all arrears would still be cured within a reasonable time—approximately 26 months, according to the Chapter 13 Trustee's unchallenged computations at the time of the confirmation hearing. This Court determined that it was more important to begin to cure promptly whatever arrears there might be rather than to delay while determining the precise amount of arrears. Surely Manhattan is better served by receiving payment of the undisputed portion of its claim without waiting for final resolution concerning the disputed portion of its claim.

---

1. Because this Opinion is written after the parties' briefs on appeal to the District Court have already been filed, the Opinion will address the objections as they are stated in Manhattan's brief and reply brief on appeal.

Bankruptcy courts nationwide routinely confirm Chapter 13 plans without awaiting judicial resolution of all claims. Indeed, in most Chapter 13 cases, the time for creditors even to file their claims under Bankruptcy Rule 3002(c) does not expire until some two months after the date normally set for the confirmation hearing. Requiring complete and final judicial resolution of all disputes as to claim amounts before confirmation of a plan is contrary to well-established custom and practice, is unsupported by anything in the statute or case law, and would inordinately delay plan confirmation to no good purpose and indeed to the detriment of all parties in interest, including creditors.

II. Manhattan's second argument is that this Court's Order confirming the Debtor's Plan "may" impose on Manhattan a waiver of its right to payment. Manhattan has misconstrued the Order. The waiver referred to in the Order is not intended to encompass a waiver of the right to payment. Rather, it relates solely to waiver of (a) the right to move, under 11 U.S.C. § 362(d), for relief from the automatic stay imposed by 11 U.S.C. § 362(a) and (b) the right to move for dismissal or conversion to Chapter 7 of the case, pursuant to 11 U.S.C. § 1307(c). The Court's Order simply requires that, before filing either such motion as a prelude to foreclosure, the creditor must first seek payment by means of a modification of the Chapter 13 Plan whereby regular monthly payments, as well as all arrears, are to be paid through payroll deductions. This is a means of assuring payment, not preventing payment.

■ III. Manhattan's third argument on appeal is that the Bankruptcy Code prohibits payment of post-petition arrears within a Chapter 13 plan. At the outset, Manhattan's standing even to raise this issue is dubious at best. The record makes clear, and Manhattan acknowledges, that most of the post-petition arrears arose not because of any default by the Debtor but because Manhattan's counsel refused to accept the Debtor's tendered payments.[2] One party is not free to prevent another party from performing and then to complain about that nonperformance.

■ But, beyond that, it is clear to this Court that, on the facts of this case, Manhattan's argument that post-petition arrears cannot be cured through a Chapter 13 plan is wrong as a matter of law. All the Courts of Appeals that have considered the issue have held that *pre*-petition arrears may be cured through a Chapter 13 plan, even after the creditor has exercised its right of acceleration and notwithstanding the language in § 1322(b)(2) that prohibits "modify[ing] the rights of holders of ... a claim [that is, like Manhattan's claim in this case] secured only by a security interest in real property that is the debtor's principal residence ..."[3] *In re Clark*, 738 F.2d 869 (7th Cir.1984); *Grubbs v. Houston First American Savings Assn.*, 730 F.2d 236 (5th Cir.1984 *en banc*); *In re Taddeo*, 685 F.2d 24 (2d Cir.1982). The overwhelming majority of District and Bankruptcy Courts have also held the same.

The courts have strictly interpreted the word "modify" in order to effectuate the rehabilitative purposes of Chapter 13. As the *Clark* court explained: (738 F.2d at 872):

> ... [T]he power to cure in § 1322(b)[ (3) and (5) ] necessarily includes the power to de-accelerate the payments on the note. De-acceleration, therefore, is not a form of modification banned by [§ 1322](b)(2) but rather is a permissible and necessary concomitant of the power to cure defaults."

Similarly, in *Taddeo*, as quoted and followed in *Grubbs*, the court held that "the power to 'cure any default' granted in § 1322(b)(3) and (b)(5) is not limited by the

---

**2.** Manhattan's Brief, p. 7, fn. 1; confirmation hearing transcript, pp. 4–5.

**3.** § 1322(b)(2) states that a Chapter 13 Plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;"

ban against 'modifying' home mortgages in § 1322(b)(2) because we do not read 'curing defaults' under (b)(3) or 'curing defaults and maintaining payments' under (b)(5) to be *modifications* of claims." [4] 730 F.2d at 241 (*Grubbs*), quoting 685 F.2d at 27 (*Taddeo*) (emphasis in originals).

True it is that a somewhat closer question is presented as to whether *post*-petition arrears, including post-confirmation arrears,[5] may be cured, in view of the provision in § 1322(b)(5) for "maintenance of payments while the case is pending on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due." *Dictum* in *Grubbs* states that "the proposed plan might *possibly* not be able to 'modify' the obligation to pay monthly installment amounts that become due on a home mortgage subsequent to the filing of the Chapter 13 petition ..." (Emphasis added.) *In re Parker*, 46 B.R. 106, 108, fn. 1 (Bankr.N.D.Ga.1985) goes further and flatly states that "the Code prohibits the *plan* from undertaking to cure a post-petition default" on a home mortgage. [Emphasis in original.] This Court does not agree with *Parker*, for reasons to be stated.

But even under *Parker* what has happened in the instant case passes muster. In this case, as in *Parker*, the Debtor's *plan* calls for "maintenance of [regular monthly deed of trust] payments while the case is pending." But, the *Parker* court held, "[a]lthough the Code prohibits the *plan* from undertaking to cure a post-petition default" on a home mortgage, "the Court may, in the exercise of its equitable discretion, give the debtors time in which to bring post-petition arrearages current." 46 B.R. at 108, fn. 1. The *Parker* court concluded: "The fact that the debtors fell short in making their first three post-petition installments to FNMA is of no conse-

quence in these proceedings." 46 B.R. at 108. In this case, as in *Parker*, it is not the Debtor's *plan* but this Court's *order* which, in the exercise of the Court's equitable discretion, has given the Debtor time to cure post-petition arrears.

Moreover, this Court agrees with the holdings in *In re Canipe*, 20 B.R. 81 (Bankr.W.D.N.C.1982), and *In re Simpkins*, 16 B.R. 956 (Bankr.E.D.Tenn.1982). The *Canipe* court held:

Section 1322(b)(5) of the Code does not expressly prohibit the inclusion of post-petition arrearages in the Plan. On the contrary, that section provides for the curing of " ... any default ..." as part of the Chapter 13 Plan. This language certainly does not exclude arrearages which accrued after the filing, but before the 341(a) meeting.

Section 1323 of the Code expressly and affirmatively permits a debtor to modify his Plan " ... at any time before confirmation ..." and [the] Plan as modified becomes "the Plan." Clearly, this provision gave the debtors the right to modify the Plan in February, 1982, to include the post-petition arrearages. Section 1305 of the Code permits a creditor to file a proof of claim for a post-petition debt " ... that is for property or services necessary for the debtor's performance under the plan."

Therefore, in order to read the provisions of sections 1323, 1322(b)(5), and section 1305(a)(2) consistently, this Court must conclude that section 1322(b)(5) allows the inclusion of post-petition arrearages, and it does so conclude.

In *Simpkins* the court held (16 B.R. at 967):

The plan should be able to provide for curing defaults that occur before its performance begins.

**4.** § 1322(b)(3) states that a Chapter 13 Plan may "(3) provide for the curing or waiving of any default;"

§ 1322(b)(5) states that a Chapter 13 Plan may "(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of

payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;"

**5.** The only arrears now at issue in this case are post-petition but *pre*-confirmation arrears.

Defaults thereafter are curable, but the question of whether cure should be allowed is different. The provision on not modifying the mortgagee's rights generally means that the plan originally must provide for maintenance of regular payments. Failure of the trustee or the debtor to make the payments means that the debtor has failed to perform the plan. Of course, the mortgagee is not automatically entitled to foreclose, and the debtor may be allowed to cure the default. In support of its conclusion that the Bankruptcy Code allows cure of post-petition as well as pre-petition defaults, the *Canipe* court cited § 1305, permitting inclusion of post-petition claims in a Chapter 13 plan,[6] and § 1323, permitting a debtor to modify a plan at any time before confirmation.[7] This Court adds § 1329 to the litany: § 1329 specifically authorizes modification of a plan *after* confirmation.[8]

The rehabilitative purposes of Chapter 13 proceedings are best served if the plan remains responsive to events that prevent the Debtor from proceeding as originally contemplated. Congress, in adopting the 1978 Code, recognized that "[t]he problems which caused financial distress to begin with, such as large families, underemployment, heavy medical expenses without adequate health insurance or simple overpurchasing, do not magically disappear on the filing of a petition under Chapter XIII." S.Rep. No. 989, 95th Cong., 2d Sess., p. 12, U.S.Code Cong. & Admin.News 1978, pp.

5787, 5798. Congress further recognized that Chapter XIII of the old Bankruptcy Act was "overly stringent and formalized"; the new Bankruptcy Code "simplifies, expands, and makes more flexible wage earner plans ..." H.Rep. No. 95–595, 95th Cong., 2d Sess., p. 117, U.S.Code Cong. & Admin.News 1978, p. 6078.

Paragraph 3 of this Court's Order confirming the Debtor's plan is simply an inexpensive and efficient way of accomplishing post-confirmation modification pursuant to § 1329.[9] The modification is to be made promptly upon a default of more than one month's duration, without the delay that typically occurs in the absence of such a provision. Prior to this Court's adoption of the procedure set forth in paragraph 3 of the confirmation order, most Chapter 13 debtors, being poor, ignorant, or frightened of lawyers, courts and the legal system, would fail to notify their attorneys when they became temporarily unable to sustain the level of payments called for in the original plan. In other words, debtors, by and large, failed through ignorance and fear to utilize § 1329 for its intended and beneficial purpose. By the time the creditor sought leave under § 362(d) to foreclose, the amount of the debtor's post-petition and post-confirmation arrears would have risen to unmanageable proportions, making foreclosure the inevitable result, and defeating the rehabilitative purposes of Chapter 13. Paragraph 3 of this Court's confirmation order solves that practical

---

**6.** § 1305(a) provides: A proof of claim may be filed by any entity that holds a claim against the debtor—

(1) for taxes that become payable to a governmental unit while the case is pending; or

(2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.

**7.** § 1323(a) provides: The debtor may modify the plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of section 1322 of this title.

**8.** § 1329(a) provides: At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be

modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

**9.** The full text of ¶ 3 of the Order is set out as an appendix to this opinion.

problem in a way permitted by the provisions of Chapter 13, because the plan, as modified pursuant to § 1329 and paragraph 3 of the order, does provide for "maintenance of [regular monthly] payments [after modification] while the case is pending," in strict compliance with § 1322(b)(5). Paragraph 3 also benefits both debtors, by saving their homes from foreclosure, and creditors, by providing the additional assurance of prompt payment that is afforded by payroll deductions.[10]

Moreover, Manhattan's overly rigid and formalized reading of Chapter 13 has no practical significance for a debtor whose counsel is sufficiently sophisticated. For example, the Debtor in this case could accomplish precisely the same result that Manhattan decries simply by allowing this case to be dismissed pursuant to Manhattan's motion and then promptly refiling a new case. Then all of the *post*-petition arrears in *this* case would automatically become *pre*-petition arrears in *that* new case.

Finally, Manhattan cites *In re Seidel*, 752 F.2d 1382 (9th Cir.1985) for the proposition that delay in payment of an already-matured debt is a "modification" prohibited as to home mortgage loans by 11 U.S.C. § 1322(b)(2); Manhattan then points out that the maturity date of its home mortgage loan is October 1988. However:

(1) According to the Chapter 13 trustee's unchallenged computations, the plan in this case will be completed within approximately 26 months after June 1985, well before October 1988. Thus, the legal proposition

cited is irrelevant, given the facts of this case.

(2) *Seidel* is contrary to the explicit holding of the *en banc* Fifth Circuit in *Grubbs* —that defaults in a mortgage which has matured by passage of time are curable under § 1322(b)(3). 730 F.2d at 247. To the same effect as *Grubbs* is *In re Larkins*, 50 B.R. 984, 13 B.C.D. 687 (W.D.Ky. 1985), in which the district court, reversing the bankruptcy court, held that " '[m]odify means to change the amount of the debt.' Thus, there is no modification ... [under] a plan whereby debtors pay the arrearages over a 36 months period ..." In *Larkins* the loan had matured in its entirety several months before the debtors even filed their Chapter 13 case. The Second Circuit in *Taddeo* and the Seventh Circuit in *Clark*, although not precisely on all fours (because they deal with maturity through acceleration rather than through simple passage of time) lend no support at all to *Seidel* and do support *Grubbs*. This Court believes that *Grubbs*, *Taddeo*, *Clark* and *Larkins* are right and *Seidel* is wrong.

In sum, the flexibility that Congress intended so as to encourage debtors to utilize Chapter 13 and achieve its rehabilitative purposes will be thwarted by Manhattan's overly rigid interpretation. By contrast, paragraph 3 of this Court's confirmation order provides a simple mechanism for promptly and efficiently curing post-petition and post-confirmation defaults. It is in full compliance with every applicable provision of Chapter 13, and it carries out rather than thwarts the "overriding rehabilitative purpose of Chapter 13" intended by Congress. *In re Taddeo*, 685 F.2d at

**10.** Manhattan's assertion that paragraph 3 of this Court's confirmation order is a "disservice" to debtors, because they must pay an extra 10% for the Trustee's commission and expenses, ignores the facts that:

(1) Chapter 13 is entirely voluntary; § 1307(b) gives a debtor the absolute, nonwaivable right to dismiss a Chapter 13 case at any time.

(2) Most debtors would rather pay an extra 10% than lose their homes through foreclosure.

(3) For most people, paying by means of payroll deductions is actually less burdensome than having to exercise the willpower to make pay-

ments out of their own pockets. "If you don't have it, you can't spend it" is an apt aphorism. The payroll-deduction system is particularly beneficial for persons of meager income who cannot afford "impulse purchases" but who, simply because of the general drabness of their lives, are perhaps tempted to make such unwise purchases more than are more affluent persons. Payroll deductions would not be used by federal, state and local tax collectors, by credit unions and for charitable contributions if they were not efficient means of assuring larger payments than otherwise would be possible.

29, quoting from *In re Davis*, 15 B.R. 22, 24 (Bankr.D.Kan.), *aff'd*, 16 B.R. 473 (D.Kan.1981).

■ IV. Manhattan's fourth argument is that it is entitled to interest on the pre-petition arrears, and that interest must be calculated at the market rate, rather than the lower "contract" rate which this Court allowed, on that portion of the arrears con-stituting principal, in its oral ruling at the time of the confirmation hearing.[11] Man-hattan cites the Sixth Circuit's opinion in *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (1982), in support of this argu-ment. But Manhattan fails to mention that same Court of Appeals' later holding in *In re Colegrove*, 771 F.2d 119, 123 (1985). In *Colegrove* the Court explicitly held that the appropriate rate is "the prevailing market rate ... with a *maximum limitation* on such rate to be the underlying contract rate of interest." (Emphasis in original; foot-note omitted.) Both of the other two cases cited by Manhattan are fully consistent with *Colegrove*, as indeed is *Memphis Bank & Trust Co.* itself.[12] In those other two cases the market rate was lower than the contract rate, and the bankruptcy courts refused to allow interest at the high-er rate. *In re Webb*, 29 B.R. 280 (Bankr.E.D.N.Y.1983) (market rate, 12%; contract rate, 24%; 12% rate allowed); *In re Moore*, 29 B.R. 27 (Bankr.D.Colo.1983) (market rate, 13.5%; contract rate, 20%; 13.5% rate allowed). It is true that there is considera-ble diversity of opinion among courts as to interest rates when Chapter 13 is used to cure arrears on home mortgage loans. But Manhattan has cited no case in which a court has allowed interest at a rate higher than the contract rate.

Notably, one line of authority suggests that the "cram-down" provision of § 1325(a)(5)(B)(ii), requiring "present val-ue" interest-equivalent payments to be made to a secured creditor that has neither accepted the plan nor received its collat-eral, does not apply and no interest at all is payable in the context of mortgages on the debtor's principal residence.[13] The Court in *In re Terry*, 780 F.2d 894 (11th Cir.1985), held that a secured creditor having a secur-ity interest only in the debtor's principal residence is not entitled to any interest at all on pre-petition arrears, absent a contrac-tual provision for it. The *Terry* Court rea-soned that § 1322(b)(2) prohibits "modifica-tion" of home mortgage claims, and that "allowance of [non-contractual] section 1325(a)(5)(B)(ii) interest ... would consti-tute a modification of the mortgage con-tract prohibited under section 1322(b)(2)." Senior Circuit Judge Celebrezze, dissenting in *Colegrove*, agreed with the unanimous decision in *Terry*, stating (771 F.2d at 125):

> "Congress in enacting Sections 1322(b)(2) and (b)(5) intended to treat security inter-ests in principal residences different from all other claims.... Accordingly, since the imposition of interest upon the arrearage is contrary to the contract in this case, I would affirm the judgment of the district court."

To the same effect are *In re Carr*, 32 B.R. 343, 345 (Bankr. N.D. Ga. 1983)("§ 1325(a)(5)(B)(ii) does not entitle the creditor to receive the discounted value of pre-petition mortgage arrears" absent a contractual provision); and *In re Simp-kins*, 16 B.R. 956 (Bankr.E.D.Tenn.1982) ("[t]he time-value of money is irrelevant" because "§ 1322(b)(2) creates a special ex-ception to § 1325(a)(5)(B)").

Even those authorities that suggest that *some* interest is allowable do not support Manhattan's position in this case. Manhat-tan points to 11 U.S.C. § 506(b) and 11 U.S.C. § 1325(a)(5)(B)(ii) to support its posi-

---

11. The Debtor interposed no objection to allow-ance of interest at the "contract" rate in this case. Through inadvertence, however, the writ-ten confirmation order fails to include a provi-sion for interest on the arrears. That oversight will be corrected if Manhattan requests and the District Court orders a remand for that purpose.

12. See footnote 3 on p. 431 of the *Memphis Bank* opinion.

13. § 1325(a)(5)(B)(ii) requires, for such a credi-tor, that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim."

tion that market rate and not the lower contract rate should apply. However, as to § 506(b), *Collier's* unequivocally states that, "[n]otwithstanding the misplaced comma or commas [in § 506(b)], post-petition interest [under § 506(b)] should be computed at the ... 'contract rate' of interest. The great majority of courts which have considered the issue have utilized the contract rate ..." 3 *Collier on Bankruptcy,* ¶ 506.05, p. 506–42. Thus, § 506(b) simply does not support Manhattan's position.

In any event, according to *Collier's,* § 506(b) "has no application in this context [of a "present value" determination under § 1325(a)(5)(B)(ii)]." *Ibid.,* p. 506–43. Section 1325(a)(5)(B)(ii) directs the bankruptcy court to confirm a plan only if secured creditors receive the "present value" of the amounts due them. *Collier's* suggests that the appropriate rate of interest to compensate the creditor for the delay in receiving payment (the "present value") is "one which approximates the creditor's cost of funds in its business borrowings." 5 *Collier's on Bankruptcy,* ¶ 1325.06, p. 1325–37. Manhattan's own cost of funds is no doubt considerably less than what Manhattan charges those who borrow from it. Thus, *Collier's* affords no comfort to Manhattan in this case. In any event, Collier's itself acknowledges that its interpretation of § 1325(a)(5)(B)(ii) is "contrary to the holdings of a number of courts ..." *Ibid.*

Most courts, like the Sixth Circuit in *Colegrove,* have interpreted § 1325(a)(5)(B)(ii) to require interest at the *lower* of the contract rate or some other rate, such as market rate, judgment rate, "legal" rate, or Treasury bill rate. *In re Thorne,* 34 B.R. 428 (Bankr.E.D.Tenn.1983); *In re Evans,* 20 B.R. 175 (Bankr.E.D.Penn.1982). The *Evans* Court denied the market rate because "the contract rate is the rate which the parties agreed was a fair return to the creditor for the debtor's repayment of the loan over an extended period of time." 20 B.R. at 177.

Principles of fairness and efficiency dictate that Manhattan receive no more than the contract rate of 5¼% interest on that portion of the pre-petition arrears constituting principal. To require higher than the contract rate would result in a windfall. Manhattan is entitled to no more than the benefit of its bargain. Manhattan evidenced its willingness to accept the contract rate by entering into the agreement initially.[14] It should be bound by that agreement.

This Court need not address in this case the issue whether it should follow *In re Terry, supra,* and disallow interest on the arrears altogether. For this Debtor has not objected to allowance of interest, and the Court has determined to allow it, at the contract rate.

For all the foregoing reasons, this Court has concluded that Manhattan has no valid objection to this Court's Order Confirming the Debtor's Chapter 13 Plan.[15]

## APPENDIX

Paragraph 3 of this Court's Confirmation Order provides: If the Debtor becomes more than one month in default on regular monthly payments which are hereafter to be made by the Debtor directly to any secured creditor, that secured creditor shall

---

**14.** Indeed, the *Terry* court, and Judge Celebrezze in *Colgrove,* take the position that, since there is no contractual provision for interest on arrears, to allow interest on arrears would be to "modify" the contract in violation of § 1322(b)(2).

The contract *does* contain a provision for late charges, and Manhattan has included the late charges in its computation of the total amount of arrears. Late charges may be regarded as a form of interest, binding on Manhattan so as to foreclose any further interest. See footnote 1 to Judge Celebrezze's dissent in *Colegrove,* 771 F.2d at 124; *cf.* D.C.Code § 28–3302(c), providing judicial discretion to lower the interest rate as against a judgment debtor who "in good faith is unable to pay the judgment."

**15.** Although not raised as a separate point, Manhattan asserts that it had "no notice" of either the § 341 meeting or the confirmation hearing. This is inaccurate. Because of a regrettable clerical error, Manhattan's *counsel* did not receive a duplicate notice, but the client, Manhattan itself, did receive notice of both hearings. No party is entitled to, or prejudiced by the lack of, more than one notice.

promptly file a notice of such defaults in this Court, and send copies of such notice to the Debtor, the Debtor's attorney, and the Chapter 13 Trustee. That Notice shall include a statement of the total amount of post-confirmation arrears and the amount of the regular monthly payment. Within ten days after the date of mailing of that Notice, the Debtor must file in writing in this Court, with copies to the secured creditor and the Chapter 13 Trustee (1) proof that there were no defaults (which may consist of cancelled checks showing timely payment) or (2) proof that the defaults are cured (which may consist of cancelled checks showing late payment) or (3) proof (such as a doctor's or employer's certificate of temporary illness or temporary suspension of employment) that there has been a change in the Debtor's circumstances which justifies modifying the Plan so as to provide for later cure, together with a motion to modify the Plan pursuant to 11 U.S.C. § 1329. If the Debtor does one of these three things, the Court will determine what order to issue, either with or without holding a hearing. If the Debtor fails to do any of these three things, then the Trustee shall forthwith either direct the Debtor's employer or other source of funding to increase deductions or else submit to the Court, and the Court may sign without further hearing, a revised order to the employer or other source of funding, increasing for the remaining life of the Plan the amount of automatic deductions (a) so as to cure the post-confirmation defaults, (b) so as to include regular monthly payments within the Plan, through the Trustee, and (c) so as to pay additional commissions and expenses to the Trustee based on the additional amounts to be paid to the secured creditor within the Plan. If necessary for feasibility the Court may on request of the Trustee extend the term of the Plan up to the maximum period allowed by law, and the Debtor's failure to file a written objection within ten days after the date of mail-

ing of the Trustee's request may be deemed to be equivalent to a request by the Debtor for court approval of a period of up to five years. The Trustee's request may be in the form of a proposed order. The Plan will thereupon by that order and without further order be amended and as amended confirmed. If the secured creditor fails to promptly file and serve a notice of the Debtor's post-confirmation defaults, the Court may treat the secured creditor's inaction as a waiver of its right.

## ORDER

Before the Court is a motion for a stay pending appeal filed by appellant Manhattan Life Insurance Co. ("Manhattan"). Although Manhattan filed its notice of appeal on August 5, 1985, it waited until December 4, 1985 to file its motion for a stay. This Court held a hearing on the motion on January 22, 1986.[1]

Just what it is Manhattan wishes to have stayed is not entirely clear. Manhattan's written motion requests a stay of "all further proceedings" in this Court. Manhattan is appealing from this Court's order confirming the Debtor's Chapter 13 Plan. But at the hearing Manhattan's counsel disclaimed any intention to seek a cessation of payments to Manhattan under that Plan, either the arrears payable through the Trustee or the regular monthly payments that the Debtor is making directly to Manhattan.

Other matters presently pending before this Court for decision are (1) Manhattan's own motion to convert this case to Chapter 7 or dismiss it, (2) the Debtor's partial objection to Manhattan's claim, and (3) the Debtor's attorney's motion for counsel fees and costs, including a request for fee-shifting. Manhattan can achieve a stay of any further proceedings on its own motion to dismiss or convert simply by withdrawing that motion without prejudice. The other

---

1. At the hearing the parties requested this Court, and the Court agreed, to assist the parties in attempting to negotiate a settlement. The Court took the motion for stay under advisement pending the settlement negotiations. Unfortunately, those negotiations have recently broken down, and the stay motion is now ripe for decision.

two matters appear to be what Manhattan is principally concerned about.

Ordinarily, the appropriate legal standard to be applied on a motion for stay pending appeal is the familiar "four-prong test" described in this Court's opinion in *In re VVF Communications Corp.*, 41 B.R. 546, 550 (1984). However, in this case the Debtor has filed an answer to Manhattan's motion for a stay, indicating that the Debtor does not object to a stay (except as to the Debtor's attorney's motion for allowance of counsel fees payable by the Debtor). Therefore, for this reason, it is

ORDERED that Manhattan Life Insurance Company's motion for stay pending appeal is GRANTED, to the extent that further proceedings in this Court relating to Manhattan's motion to convert this case to Chapter 7 or dismiss it, the Debtor's partial objection to Manhattan's claim, and the Debtor's attorney's motion to assess the Debtor's attorney's fees against Manhattan are hereby STAYED.