## In re Joseph R. ACEVEDO, Jr. and Zobeida M. Acevedo, Debtors.

### No. CV 81–3702.

United States District Court, E.D. New York.

Oct. 1, 1982.

---

Donner, Fagelson, Hariton & Berka, P.C., Bay Shore, N.Y., for debtors-appellees.

Cullen & Dykman, Brooklyn, N.Y., for creditor-appellant.

*Memorandum of Decision and Order*

MISHLER, District Judge.

The Brooklyn Savings Bank (the "Bank") brings this appeal from the decision of Bankruptcy Court Judge C. Albert Parente dated March 18, 1981 and the Order subsequently signed by Judge Parente on May 27, 1981. Judge Parente (1) denied the Bank's objections to the original plan submitted by Joseph R. Acevedo, Jr. and his wife, Zobeida M. Acevedo ("Debtors") and (2) confirmed the amended plan submitted by the Debtors under Chapter 13 of the Bankruptcy Code. On appeal, the Bank claims that the plan was defective under the Bankruptcy Code, 11 U.S.C. § 1322(b), and that confirmation of the plan under § 1325 was therefore improper. We disagree.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

FACTS

The Bank is the assignee of a first mortgage on the debtors' residence located at 54 Glenmore Avenue, Central Islip, New York.[1] The debtors failed to make payments (in the amount of $203.79 per month) beginning with the payment due on September 1, 1979. On April 1, 1980 the Bank exercised its right to accelerate the entire outstanding balance under the mortgage and commenced a foreclosure action in Supreme Court of the State of New York, County of Suffolk. The state court granted (1) a default judgment in the amount of $31,052.13 ($29,249.01 due on the mortgage plus foreclosure costs of $1,803.12) in favor of the Bank and, (2) on August 29, 1980, a final judgment of foreclosure and sale. *Brooklyn Savings Bank v. Acevedo*, No. 80/6352 (Sup.Ct. Suffolk County Aug. 29, 1980).

On September 5, 1980, Debtors filed for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 *et seq.* (Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2645 *et seq.*) This filing imposed an automatic stay pursuant to 11 U.S.C. § 362 which prevented the Bank from enforcing the state court judgment. Subsequently, Debtors proposed a plan which provided for de-acceleration of the mortgage balance, reinstitution of the original mortgage payment schedule and payment of the pre-acceleration mortgage arrears ($5,968.16) over the term of the plan. The Bank objected to such de-acceleration on the grounds that cure by de-acceleration is not permitted under 11 U.S.C. § 1322(b)[2] and that confirmation of the

---

1. The mortgage was taken to secure a loan of $26,500 with interest at 8½ percent per annum, for a term running from October 1, 1976 to October 1, 2006. Monthly payments, inclusive of interest, were set at $203.79.

2. U.S.C. § 1322(b) provides, in relevant part, as follows:
(b). . . the plan may—
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

\* \* \* \* \* \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

plan was therefore improper under U.S.C. § 1325(a)(1) and (5).[3] The Bank argued that the entire accelerated amount of the default judgment must be paid over the term of the plan.

The bankruptcy court held that Chapter 13 debtors may attempt, pursuant to 11 U.S.C. § 1322(b)(5), to cure pre-acceleration mortgage arrears and reinstate the original payment schedule of their mortgage, notwithstanding the existence of a state court judgment of foreclosure and sale. The court found that the three year curative period, as originally proposed by the Debtors, was not "reasonable" within the meaning of 11 U.S.C. § 1322(b)(5) and that, under the circumstances, a reasonable curative period could not extend beyond eighteen months. *In re Acevedo,* 9 B.R. 852, 4 C.B. C.2d (MB) 178. (Bkrtcy.E.D.N.Y.1981). On May 27, 1981 the bankruptcy court approved Debtors' amended plan which de-accelerated the payments due under the mortgage, as proposed in the original plan, but which provided for a curative period of eighteen months.

DISCUSSION

The question before this court is whether the default of an accelerated debt may be cured by a debtor under Chapter 13 by the payment of pre-acceleration arrears and the reinstitution of the payment schedule under the mortgage, notwithstanding a state court judgment for foreclosure and sale of the mortgaged property. A recent decision by the United States Court of Appeals for the Second Circuit, *In re Taddeo,* 685 F.2d 24 (2d Cir.1982), addressed a remarkably similar question.[4] As in the matter now

before us, the bankruptcy judge in *Taddeo* confirmed the debtors' plan which provided for curing of a default by de-acceleration, payment of pre-acceleration arrears and reinstatement of the original mortgage payment schedule. On Appeal, the Second Circuit affirmed, holding that:

> When Congress empowered Chapter 13 debtors to "cure defaults," we think Congress intended to allow mortgagors to "de-accelerate" their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to "de-accelerate".... Secondly, we believe that the power to "cure any de-fault" granted in § 1332(b)(3) and (b)(5) is not limited by the ban against "modifying" home mortgages in § 1322(b)(2) because we do not read "curing defaults" under (b)(3) or "curing defaults and maintaining payments" under (b)(5) to be *modifications* of claims.

*Taddeo, supra,* 685 F.2d at 26–27.

The Bank argues that acceleration of the mortgage made the entire amount due prior to the date Debtors' petition was filed and that pursuant to 11 U.S.C. § 1325(a) confirmation of the plan was improper unless the entire accelerated debt is to be paid over the term of the Debtors' plan. Similarly, the Bank argues that the cure proposed by Debtors pursuant to 11 U.S.C. § 1322(b)(5) is unavailable because the accelerated debt herein was due prior to the plan's curative period and that § 1322(b)(5) applies only to a series of deferred payment claims where the last payment is due after the last pay-

---

**3.** 11 U.S.C. § 1325(a)(1) and (5) provide, in relevant part, as follows:

> The court shall confirm a plan if—
> (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
> (5) with respect to each allowed secured claim provided for by the plan—
>   (A) the holder of such claim has accepted the plan;
>   (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is

not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder.

**4.** In *Taddeo, supra,* the defendants withheld mortgage payments with respect to their residence, claiming that they would continue to do so until plaintiff mortgagee, who had sold the property to defendants, made certain repairs. The mortgagee exercised her option to accelerate the entire balance due under the mortgage and obtained summary judgment for that amount in state court. The defendant debtors then filed a petition under Chapter 13 of the Bankruptcy Code.

ment scheduled under the plan. The Debtors rely upon the curative powers set forth at 11 U.S.C. § 1322, claiming that the limited power to modify as set forth at § 1322(b)(2) with respect to secured claims against real estate is to be read together with the broad curative powers set forth at §§ 1322(b)(3) and (5).

We find that the decision of the Second Circuit in *Taddeo* compels our affirmance here. In that case, the court reviewed at length the legislative history supporting its interpretation of the curative powers under § 1322(b) (*Taddeo, supra,* 685 F.2d at 27–28) and discussed the distinction between the power to modify a claim (reduce payments) and to cure a claim (maintain payments) (*Id.* at 27) in reaching the conclusion that the concept of cure contains the power to de-accelerate (*Id.* at 27). The court also held alternatively, "that the ban on 'modification' in § 1332(b)(2) does not limit the Taddeos' exercise of their curative powers under either § 1322(b)(3) or (b)(5)." (*Id.*) We refer to the persuasive reasoning of the court in *Taddeo* without restating it here.

The only distinction between the facts in *Taddeo* and the matter now before us is that the creditor in *Taddeo* obtained only a summary judgment for the accelerated amount prior to imposition of the stay pursuant to 11 U.S.C. § 362. Here, the Bank obtained a final judgment of foreclosure and sale prior to the effective date of the automatic stay. Nonetheless, we find that this factual distinction does not require a different result here.[5] Under New York law, a foreclosed mortgage is not merged into the foreclosure judgment until the actual sale of the property occurs. *See Pru-*

dence Co. v. 160 West Seventy Third Street Corp., 260 N.Y. 205, 183 N.E. 365 (1932); *Dulberg v. Ebenhart,* 68 A.D.2d 323, 417 N.Y.S.2d 71 (1st Dep't 1979); *Monday Properties, Inc. v. A–1 Plumbing & Heating Co.,* 25 Misc.2d 625, 204 N.Y.S.2d 330 (Sup.Ct. 1960). Since the mortgage "exists" up to the time of actual sale of the property, it remains subject to cure pursuant to § 1322(b)(3) and (5). Accordingly, we hold that a debtor, under Chapter 13 may employ the curative provisions of § 1322(b)(5) to de-accelerate a mortgage obligation and reinstate its original payment schedule at any time prior to the actual sale of the encumbered property. *See In re Taddeo,* 9 B.R. 299 (Bkrtcy.E.D.N.Y.1981), *aff'd,* 15 B.R. 273 (E.D.N.Y.1981), *aff'd,* 685 F.2d 24 (2d Cir.1982); *United Companies Financial Corp. v. Brantley,* 6 B.R. 178 (Bkrtcy.N.D. Fla.1980); *Matter of Breuer,* 4 B.R. 499 (Bkrtcy.S.D.N.Y.1980).

The decision of the bankruptcy court for the Eastern District of New York, dated March 18, 1981 and the subsequent Order of that court dated May 27, 1981 confirming Debtors' amended plan are affirmed, and it is

SO ORDERED.

The Clerk of the Court is directed to enter judgment in favor of Debtors-Appellees and against Creditor-Appellant.

---

**5.** The Second Circuit recognized the applicability in *Taddeo* of the "overriding rehabilitative purpose of Chapter 13." *Taddeo, supra,* 685 F.2d at 29. We find that such policy considerations are equally applicable here. Further, we find that the reasoning of the court in *Taddeo,* as set forth below, is similarly applicable to the facts presently before us:

> Conditioning a debtor's right to cure on its having filed a Chapter 13 petition prior to acceleration would prompt unseemly and wasteful races to the courthouse. Worse, these would be races in which mortgagees possess an unwarranted and likely insur-

mountable advantage: wage earners seldom will possess the sophistication in bankruptcy matters that financial institutions do, and often will not have retained counsel in time for counsel to do much good. In contrast, permitting debtors in the Taddeos' position to de-accelerate by payment of the arrearages will encourage parties to negotiate in good faith rather than having to fear that the mortgagee will tip the balance irrevocably by accelerating or that the debtor may prevent or at least long postpone this by filing a Chapter 13 petition.

*Taddeo, supra,* 685 F.2d at 27.