**In re Glenn W. LARKINS, Pansy Larkins, Debtors.**

**Glenn W. LARKINS, Pansy Larkins, Appellants,**

v.

**COMMERCIAL BANK OF DAWSON, et al., Appellees.**

No. 84–0241–0–J.

Bankruptcy No. 4–84–154(D).

United States District Court, W.D. Kentucky, Owensboro Division.

Feb. 14, 1985.

Jeff S. Taylor, Gordon, Gordon & Craig, Owensboro, Ky., for appellants.

Hal C. Harned, Massamore & Harned, Madisonville, Ky., John Henriksen, Office of Gen. Counsel, Frankfort, Ky., Charles L. Lamar, Lovett & Lamar, Owensboro, Ky., for appellees.

## MEMORANDUM OPINION

JOHNSTONE, District Judge.

This matter is before the court on appeal from the Bankruptcy Court's denial of confirmation of the debtor's proposed Chapter 13 plan. Jurisdiction over this suit exists under 28 U.S.C. § 1334(a), which provides that the district courts have jurisdiction of appeals from all final judgments of the bankruptcy courts.

The central issue before the court is whether a debtor may cure a mortgage default on his principal residence under a Chapter 13 plan pursuant to 11 U.S.C. §§ 1322(b)(2), (3) and (5), where the plan is filed after a foreclosure judgment has been obtained in state court, but prior to the actual foreclosure sale.

The debtors, Glenn and Pansy Larkins, gave the Commercial Bank of Dawson a promissory note and second mortgage on their principal residence to secure a loan. The maturity date of the note and mortgage was February 1, 1984. The debtors defaulted on the loan, and on April 27, 1983, the bank filed a foreclosure action in Hopkins Circuit Court which entered a judgment and order of sale in favor the the bank on May 2, 1984. On May 10, 1984, the debtors filed a Chapter 13 petition. The plan provided for payment of all the Larkins' debt over a sixty month period, including an $18,134 payment to the bank within seven months of confirmation of the plan.

The bankruptcy court denied confirmation of the debtors' plan ruling that since the mortgage had been reduced to foreclosure judgment, the entire amount of the loan was due and owing, and the proposed payment of the mortgage during the term of the plan would not constitute a reasonable time to cure the default as is required by 11 U.S.C. § 1322(b)(5). The court relied upon *In re Coleman*, 2 B.R. 348 (Bankr.W. D.Ky.1980), *aff'd*, 5 B.R. 813 (W.D.Ky. 1980). In that case, the bankruptcy court rejected the debtor's proposed plan finding that the amount due was the full amount of principal, interests, and costs because there had been a foreclosure judgment in state court. Under the circumstances presented, three years to cure the default was not a reasonable time under § 1322(b)(5). *Id.*

Judge Deitz noted that there were several recent cases that disagreed with the *Coleman* decision, but that he was bound by the law of this district. On this appeal, debtors argue that this court should follow those other cases, reverse the bankruptcy court, and allow them to cure their default and pay the amount due over the course of their proposed plan. The bank responds by contending that this case can be distinguished from that line of authority because it involves a debt that matured on its own, and that has been reduced to a foreclosure judgment in state court. Thus, *Coleman* applies, the entire amount is due, and sixty months is not a reasonable time to cure the

default. For the reasons set forth below, the court agrees with debtors' arguments and will reverse the bankruptcy court.

The curing of defaults in Chapter 13 cases is governed by 11 U.S.C. § 1322 which provides that:

> (b) the plan may— ...
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;
> (3) provide for the curing or waiving of any default; ...
>
> ....
>
> (5) notwithstanding paragraph (2) of this Subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ....

11 U.S.C. § 1322(b)(2), (3), and (5).

Three circuit courts have recently interpreted this statute. *In re Taddeo*, 685 F.2d 24 (2d Cir.1982); *Grubbs v. Houston First American Savings Association*, 730 F.2d 236 (5th Cir.1984); and *Matter of Clark*, 738 F.2d 869 (7th Cir.1984). In *Taddeo* debtors defaulted on a long-term mortgage. The mortgagee accelerated the mortgage, declared its balance due immediately, and initiated foreclosure proceedings. Those proceedings were stayed when debtors filed a Chapter 13 petition. The bankruptcy court held that under § 1322(b), debtors could cure the default by paying the arrearages, and thereby reinstate the mortgage. The second circuit affirmed holding that "[w]hen Congress empowered Chapter 13 debtors to 'cure defaults,' we think Congress intended to allow mortgagors to 'de-accelerate' their mortgage and reinstate its original payment schedule." *Taddeo*, 685 F.2d at 27. It concluded that § 1322(b)(2) which prevents a plan from modifying a principal residence mortgage, does not preclude the curative measures contained in § 1322(b)(3). Modification of a claim refers to reduction in payments. Thus, curing a default and maintaining payments is not a modification of a claim. *Id.* at 28. "We believe that the power to 'cure any default' granted in § 1322(b)(3) and (b)(5) is not limited by the ban against 'modifying' home mortgages in § 1322(b)(2) because we do not read 'curing defaults' under (b)(3) or 'curing defaults and maintaining payments' under (b)(5) to be *modifications* of claims." *Id.* at 26–27.

The Fifth Circuit extended the *Taddeo* decision in *Grubbs v. Houston First American Savings*, 730 F.2d 236. That case involved a second mortgage on debtors' principal residence. Debtors defaulted and their creditor accelerated into maturity the full balance of the note. After a detailed analysis of the legislative history of § 1322(b), the court held that a home-mortgagor debtor is not barred either "(a) from curing a pre-petition acceleration into maturity of the unpaid installments due upon his home mortgage, or (b) from proposing ... that all past due or matured amounts secured by his home mortgage be paid during the term of his plan, if approved by the court...." *Id.* at 237. Thus, the court found that there was no "modification" of a claim where a Chapter 13 plan provided for payment over 36 months of past matured amounts. *Id.* at 238.

Finally, the Seventh Circuit has followed the *Taddeo* and *Grubbs* decisions, *Matter of Clark*, 738 F.2d 869 (6th Cir.1984), and held that under § 1322 a debtor is entitled to cure a default on a residential mortgage loan even though he filed a bankruptcy petition only after a state court had entered a judgment of foreclosure. *Id.* at 870. The court reasoned that the debtors maintained an interest in the property, despite the judgment, at the time that they filed the Chapter 13 petition. *Id.* at 871. Moreover, avoiding the state court judgment did not "modify" the creditor's claim. "Cure" and "modify" must have different meanings. Otherwise § 1322(b)(3) would be superfluous. "Cure" means to remedy the default, *i.e.*, to pay all amounts due and owing. *Id.* at 872. "Modify" means to change the amount of the debt. Thus, there is no modification of the plan whereby debtors pay the arrearages over a 36

month period and begin installment payments on the mortgage outside the plan.

Several other courts have held that a default can be cured, even after the mortgage has been brought to foreclosure judgment. *In re Gwinn*, 34 B.R. 936 (Bankr.S. D.Ohio 1983); *In re Acevedo*, 26 B.R. 994 (E.D.N.Y.1982); *In re Mueller*, 18 B.R. 851 (Bankr.W.D.Ark.1982); *In re Young*, 22 B.R. 620 (Bank.N.D.Ill.1982); *In re Hubbard*, 23 B.R. 671 (Bankr.S.D.Ohio 1982); *See also In re Thompson*, 17 B.R. 748 (Bankr.W.D.Mich.1982) (holding that a debtor may cure his default even after foreclosure sale, as long as the state redemption period has not expired). Those decisions emphasize the overriding rehabilitative purpose of Chapter 13, and note that that purpose is just as applicable to mortgages which have been reduced to judgment. *Acevedo*, 26 B.R. at 997. "Section 1322(b) should be used liberally due to the intent of Chapter 13 to foster debtor rehabilitation. Since Congress placed such great emphasis on the ability of the debtor to be rehabilitated, [these courts] permit the curing of accelerated mortgages despite the status of state law." *Young*, 22 B.R. at 622.

█ The case before the court falls squarely within the rules enunciated above. The bank argues that this case is distinguishable from that line of authority because the mortgage had naturally matured before the state court judgment was rendered and before the debtor's petition was filed. The court does not agree. The *Grubbs* decision speaks directly to mortgages that have matured. It makes no distinction between those that mature by acceleration and those that mature by the passage of time. In either case, § 1322 provides for payment of matured amounts during the term of the debtors' plan. The rationale for the rule is the same whether or not the mortgage matures naturally. It is in the best interest of debtors to allow a debtor to retain his home. "It is a significant motivating factor for the debtor to attempt to pay off his debts through Chapter 13 rather than discharge them through Chapter 7. The debtors maintain their self respect, the unsecured creditors receive a

higher payoff, and the government benefits from a more stable tax base." *In re Gwinn*, 34 B.R. 936. In addition, "one of the primary purposes of Chapter 13 rehabilitation is to save homesteads." *Young* 22 B.R. at 622. It would certainly defeat that purpose to permit the bank to foreclose upon the Larkins because the loan happened to mature prior to the filing of the Chapter 13 petition.

█ Finally, the court notes that the bank's second home-lien encumbrance is not a long-term mortgage having its last payment to become "due after the date on which the final payment under the plan is due." § 1322(b)(5). Thus, the default in payment was curable under § 1322(b)(3). *Grubbs*, 730 F.2d at 247. Although the debtors' plan cannot modify the obligation, § 1322(b)(2), it can "provide for the payment from future income of previously non-accelerated matured amounts that had become due prior to the filing of the Chapter 13 petition, §§ 1322(a), 1327, 1328(a)." *Id.* at 247.

For these reasons, this court holds that neither § 1322(b), nor the state court foreclosure judgment, bars debtors' proposed plan which provides for payment of the matured amount due on the debt to the bank from the Larkins' future income over the life of the plan. Such a plan would not "modify" the home-mortgage indebtedness.

Accordingly, the court REVERSES the judgment of the bankruptcy court and REMANDS for consideration of the Larkins' Chapter 13 plan and of any other objections thereto if renewed by the creditor.