In re Donald M. **DOCHNIAK, Saundra L. Dochniak, Debtor(s).**

No. 5–87–00573(2)13.

United States Bankruptcy Court, W.D. Kentucky.

June 23, 1988.

Robert Fay, Paducah, Ky., for debtors.

William W. Lawrence, trustee, Louisville, Ky.

Mark C. Whitlow, Paducah, Ky., for Curtis Homes and William Lawrence.

### MEMORANDUM–OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This matter is before the Court on the creditor, Curtis Homes, Inc.'s, objection to confirmation of the debtor's proposed Chapter 13 plan on the basis that the plan violates the provisions of 11 U.S.C. § 1322(b)(2). The basic facts are as follows.

In October of 1984, Curtis Homes, Inc. ("Curtis Homes") agreed to build a home for Donald and Saundra Dochniak ("debtors") and, in consideration thereof, the debtors executed a Retail Installment Contract ("contract"), in the principal sum of $52,107.00, with interest thereon at the rate of eleven and one-half (11½%), per annum. Thereafter, the debtors made changes to the home, causing additional indebtedness, as evidenced by five (5) written change orders executed by the debtors. Both the contract and change orders were secured by a first mortgage on the debtors' principal residence. As of May 7, 1987, the contract and change orders, as well as miscellaneous charges including accrued interest less payments made by the debtors, account for a total indebtedness of $75,541.33.

The terms of the Contract provided for monthly payments beginning six (6) months after Curtis Homes' first delivery of materials to the debtors and continuing for eighteen months, when, on June 1, 1986, a final balloon payment consisting of the entire unpaid balance became due.

When the debtors were unable to make their final balloon payment on June 1, 1986, Curtis Homes gratuitously extended to them additional time in which to pay the

note in full. Approximately fifteen (15) months after the loan maturity date, Curtis Homes initiated foreclosure proceedings in McCracken Circuit Court. A Judgment and Order of Sale was entered against the debtors on November 6, 1987 in the sum of $75,541.33, plus interest at the rate of $21.30 per day, from May 7, 1987 until paid. Shortly thereafter, on November 30, 1987, the debtors filed for Chapter 13 relief. In their Chapter 13 plan filed with the Court, the debtors proposed to pay Curtis Homes $200.00 a month for five years to cover arrearages owed to Curtis Homes. The plan also provides for future mortgage payments to be paid to Curtis Homes outside the plan. Curtis Homes has filed its objection to the debtor's plan arguing that the plan modifies the rights of Curtis Homes in violation of § 1322(b) of the Code.

We agree with the creditor that the plan, as it presently exists, is unconfirmable, but not because it violates the provisions of § 1322(b). That section, in pertinent part, states:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

The precise issue before us is whether the debtors should be allowed to cure the default on their mortgage which, by its own terms, had naturally matured prior to the bankruptcy filing.

Most courts would agree that § 1322(b) of the Code allows a debtor to cure a pre-petition default if the debt has not been accelerated prior to the filing of the Chapter 13 petition. However, courts disagree over whether and under what circumstances § 1322(b) allows a debtor to cure a default after the mortgage has either (1) matured by acceleration; or (2) matured by its own terms, as in this case.

In the present case, Curtis Homes does not dispute the fact that § 1322(b)(5) permits a debtor to cure a default on a *long-term obligation* by decelerating the mortgage and reinstating the original payment terms, so long as the final payment under the original agreement is "due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). However, it contends that its eighteen month financing arrangement with the debtors was nothing more than a *short-term obligation* which had naturally matured by its own terms prior to the filing of the bankruptcy. Thus, it argues that its claim is not subject to cure under § 1322(b)(5) since that section only applies to the curing of defaults on obligations which mature subsequent to the final payment under the plan.

Further, Curtis Homes cites us to a number of cases which hold that the cure provisions of subsections (b)(3) and (b)(5) are inapplicable when a debt has naturally matured in the absence of acceleration, prior to the filing of the petition. *In re Seidel*, 752 F.2d 1382 (1985); *In re Sennhenn*, 80 B.R. 89 (Bankr.N.D.Ohio 1987); and *Matter of Bosteder*, 59 B.R. 878 (Bankr.S.D.Ohio 1986). The reasoning behind this line of thinking is that when a Chapter 13 plan extends the time for payment beyond the time originally contemplated by the creditor, the creditor's rights are being "modified" in violation of § 1322(b)(2) and therefore, the plan is unconfirmable.

 We agree with a majority of courts that, for purposes of curing a default on a long-term obligation, Congress intended to allow debtors the opportunity to cure their default by decelerating their mortgage and reinstating the original pay-

ment schedule. *In re Taddeo*, 685 F.2d 24 (1982), *Grubbs v. Houston First American Sav. Ass'n.* 730 F.2d 236 (1984). With regard to short term obligations, we recognize the fact that a growing number of courts do not allow a debtor to cure their default if the debt is one which has naturally matured prior to the filing. However, in this district, we are bound to follow the law, as set forth in *In re Larkins*, 50 B.R. 984 (D.C.Ky, 1985), which allows a debtor to cure a default on a debt, pursuant to § 1322(b)(3) and (b)(5) of the Code, regardless of how it matured.

The facts in *Larkins* are quite similar to ours in that the debtors executed a promissory note secured by a mortgage on their home which had naturally matured prior to the filing of the bankruptcy. In their Chapter 13 plan, the debtors proposed to pay back all of their debt over a sixty month period. In that case, the bank (making the same argument as Curtis Homes) contended that since the mortgage had naturally matured before the filing of the petition, any attempt to allow repayment of the debt under the plan would "modify" the creditor's rights in violation of 1322(b)(2). The Court summarily dismissed the bank's argument, stating that since the Court in *Grubbs*, supra, did not distinguish between debts that mature by acceleration and debts that mature by passage of time, then there must not be a difference between the two types of debts for purposes of curing a default under § 1322(b).

In the present case, Curtis Homes' initial argument that § 1322(b)(5) only applies to long term obligations, was also addressed in the *Larkins* case. In *Larkins*, the Court notes that its own mortgage is not a long-term mortgage having its last payment to become "due after the date on which the final payment under the plan is due." Thus, the Court states that the default is curable under § 1322(b)(3) and the plan can "provide for the payment from future income of previously non-accelerated matured amounts that had become due prior to the filing of the Chapter 13". *Larkins*, at 987. (See also, *Grubbs*, 730 F.2d at 247)

Following the Court's opinion in *Larkins*, the debtors must be allowed to cure their default under § 1322(b)(3). By definition, a default is an event in the debtor-creditor relationship which triggers certain consequences—here, acceleration and a state court judgment. Curing a default ordinarily means taking care of the triggering event and returning to pre-default conditions. *In re Taddeo*, 685 F.2d 24 (1982).

In this case, we find that the debtors defaulted on their note when they failed to pay the total unpaid principal balance when due. In curing their default, the debtors shall have the opportunity to propose a feasible plan to this Court that provides for payment in full of the unpaid principal balance due plus any accrued interest in monthly, amortized installments over the life of the plan.

Accordingly, since the debtors' proposed plan, as it presently exists, does not provide for the repayment in full of the total indebtedness, over the life of the plan, we must sustain Curtis Homes' objection to confirmation of the plan.