**In re Luther L. TAYLOR and wife, Jessie Taylor, Debtors.**

**Bankruptcy No. 88–01633–BKC–GTH.**

United States Bankruptcy Court, N.D. Mississippi.

Dec. 7, 1988.

Raybun Jones, Dyer, Dyer, Dyer and Jones, Greenville, Miss., for Luther L. Taylor and Jessie Taylor.

Carver A. Randle, Indianola, Miss., for Lenwood Shortridge.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

Came on for consideration the motion for relief from the automatic stay filed by Lenwood Shortridge, hereinafter referred to as movant or Shortridge; response to said motion having been filed by the above captioned debtors; all parties being represented before the Court by their respective attorneys of record; and the Court having heard and considered same hereby finds as follows, to-wit:

### I.

This Court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G).

### II.

In October, 1986, Peoples Bank of the Delta foreclosed its deed of trust which encumbered the residential real property owned by the debtors. This deed of trust was subordinate to a first deed of trust existing in favor of the United States of America, Department of Housing and Urban Development, hereinafter HUD. Subsequent to its foreclosure, Peoples Bank of the Delta purchased the HUD deed of trust and commenced an ejectment action against the debtors in the Circuit Court of Sunflower County, Mississippi. A consent order was entered in that litigation which provided that the debtors could repurchase their residence for the sum of $24,500.00 on or before February 27, 1987.

In order to finance the repurchase of their residence, the debtors verbally entered into a contract with Lenwood Shortridge to borrow sufficient monies to repay the bank. As a part of this transaction, the real property was conveyed to Shortridge as security for his loan. The parties initially agreed that the loan was to bear interest at the rate of 10% per annum and was to be repayable to Shortridge at the rate of $350.00 per month. Subsequent to the verbal contract and the transfer of the real property to Shortridge, Shortridge required the debtors to execute a repurchase agreement which contained a significantly higher total purchase price, an increased rate of interest, and higher monthly payments.

The debtors were unable to afford the terms of the written repurchase agreement, so Shortridge filed a complaint of ejectment against the debtors in the Circuit Court of Sunflower County, Mississippi, in March, 1988. This cause of action was later transferred to the Chancery Court of Sunflower County, Mississippi, after the debtors raised the equitable defense that the deed conveying title to Shortridge was, in essence, a deed of trust or mortgage. The debtors also raised the defense that the Shortridge repurchase agreement was usurious in violation of Mississippi Code Annotated § 75–17–1 to –35 (1972 & Supp. 1986).

Following a fully litigated hearing, the Chancery Court ruled that the written repurchase agreement was usurious and void. At the same time, as a requirement for the revestment of title to the real property in the debtors, the Court ordered the debtors to pay Shortridge the sum of $25,-000.00 within a thirty day period plus interest at the rate of 8% per annum from and after February 28, 1987. In the event that the debtors could not make this payment, Shortridge was awarded possession of the property. The final decree of the Chancery Court was executed on July 14, 1988, and entered subsequently thereafter.

Because the debtors were unable to obtain financing to meet the repayment requirement of the Chancery Court decree within the thirty day period, they filed their Chapter 13 voluntary bankruptcy petition on August 15, 1988. In their Chapter 13 plan, they proposed to pay Shortridge, "$600.00 per month for 48 months with balloon payment for all interest accrued on $28,166.67 for four years at 10%." The Court presumes that the figure of $28,-166.67 represents the $25,000.00 repayment amount set forth in the Chancery Court decree plus interest accruing after February 27, 1987 through approximately August 15, 1988 at the rate of 8% per annum. The Court further presumes that the language set forth in the debtors' proposed Chapter 13 plan indicates that all interest accruing on the sum of $28,166.67 at the rate of 10% per annum throughout the 48 month term will be payable at the conclusion of the plan.

### III.

The Chancery Court of Sunflower County, Mississippi, afforded the debtors an opportunity to regain title to their property by the payment to Shortridge of the sum of $25,000.00, plus interest as set forth hereinabove. This payment, which was to be made within a thirty day period of time, followed the reasoning of *Harris v. Kemp*, 451 So.2d 1362 (Miss.1984). In that case, the circumstances were strikingly similar to those now before this Court. The Mississippi Supreme Court held that where a deed, otherwise absolute on its face, was determined to be a mortgage or security instrument, the grantor/mortgagor should be permitted to regain title to his property by the repayment to the grantee/mortgagee of the related indebtedness plus interest *within a reasonable time*. In the instant proceeding, a repayment period of thirty days strains the concept of reasonableness to this Court, particularly considering the debtors' financial circumstances, but this Court is reluctant to superimpose its judgment over that of the Chancery Court unless the Bankruptcy Code dictates otherwise.

### IV.

This Chapter 13 proceeding is governed by 11 U.S.C. § 1322(b) which provides in pertinent part as follows:

(b) the plan may—

. . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured

claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

Because of the way that the Chancellor restructured the indebtedness owed by the debtors to Shortridge, 11 U.S.C. § 1322(b)(5) has no application to this proceeding. The Chancery Court's final decree also created an indebtedness secured by the debtors' principal place of residence. This is evidenced by the fact that the debtors continue to reside in their residence, the possession of which is to be given to Shortridge if the debtors are unable to make the required payment in a timely fashion. As such, the prohibition against modifying the rights of a holder of a claim, secured exclusively by the debtors' principal residence, as set forth in 11 U.S.C. § 1322(b)(2), must be considered in conjunction with the effect of 11 U.S.C. § 1322(b)(3), which provides for the curing of any default.

This case is factually similar to the cases of *Matter of Clark,* 738 F.2d 869 (7th Cir. 1984) and *Grubbs v. Houston First American Savings Association,* 730 F.2d 236 (5th Cir.1984), where the debtors in each case were permitted to cure prepetition defaults over the course of their Chapter 13 plans.

In *Matter of Clark,* the Seventh Circuit permitted the debtors to cure a default in their residential mortgage which had been accelerated to maturity before the bankruptcy filing. A judgment of foreclosure had also been entered and enrolled prepetition in the Wisconsin State Court. The Court thoroughly examined the provisions of 11 U.S.C. § 1322(b)(2), (3), and (5) and reached the conclusion that there was an obvious distinction between modifying the rights of holders of claims and providing for the curing of defaults. In *Clark,* the non-accelerated payments under the indebtedness extended beyond the date of the last payment due under the Chapter 13 plan. Therefore, the Court, utilizing 11 U.S.C. § 1322(b)(5), permitted the debtors to deaccelerate the maturity of the indebtedness. To accomplish this result, the debtors were required to cure the prepetition defaults through the plan and maintain the regular installments which continued to accrue under the indebtedness.

The *Grubbs* decision is perhaps even more significant insofar as the instant proceeding is concerned. In that case, the full amount of the indebtedness matured before the final payment under the Chapter 13 plan became due. The Fifth Circuit discussed the distinction between modifying the rights of holders of claims and the curing of defaults. The Court held that the creditor's acceleration of its indebtedness, triggered by the debtors' prepetition defaults, was curable under 11 U.S.C. § 1322(b)(3), rather than 11 U.S.C. § 1322(b)(5). The Court indicated, however, that since the indebtedness fully matured within the life of the plan that the indebtedness must be paid in full through the plan. At the same time, the Court noted that this was not a modification of the residential real property indebtedness, prohibited by 11 U.S.C. § 1322(b)(2), but merely the curing of the prepetition defaults, permitted by 11 U.S.C. § 1322(b)(3). The *Grubbs* opinion cited with approval *In re Taddeo,* 685 F.2d 24 (2nd Cir.1982), another Circuit Court of Appeals decision consistently interpreting these Code sections.

Another pertinent case is *In re Larkins,* 50 B.R. 984 (D.C.W.D.Ky.1985), where the District Court thoroughly discussed *Matter of Clark, Grubbs v. Houston First American Savings Association,* and *In re Taddeo,* the three Circuit decisions mentioned hereinabove. Under circumstances where the indebtedness had fully matured prior to the debtors filing their Chapter 13 plan, the Court observed that it made no difference whether the indebtedness had matured by acceleration or by the passage of time. The Court held that in either case the plan could provide for the payment of matured amounts during the term of the plan. The indebtedness, of course, was secured exclusively by the debtors' principal place of residence. Significantly, the Court made the following observations:

It is in the best interest of debtors to allow a debtor to retain his home. "It is a significant motivating factor for the

debtor to attempt to pay off his debts through Chapter 13 rather than discharge them through Chapter 7. The debtors maintain their self respect, the unsecured creditors receive a higher pay-off, and the government benefits from a more stable tax base." *In re Gwinn*, 34 B.R. 936 [(Bankr. Ohio 1983)]. In addition, "one of the primary purposes of Chapter 13 rehabilitation is to save homesteads." [*In re] Young* 22 B.R. [620] at 622 [(Bankr.Ill.1982)]. It would certainly defeat that purpose to permit the bank to foreclose upon the Larkins because the loan happened to mature prior to the filing of the Chapter 13 petition.

Finally, the court notes that the bank's second home-lien encumbrance is not a long-term mortgage having its last payment to become "due after the date on which the final payment under the plan is due." § 1322(b)(5). Thus, the default in payment was curable under § 1322(b)(3). *Grubbs*, 730 F.2d at 247. Although the debtors' plan cannot modify the obligation, § 1322(b)(2), it can "provide for the payment from future income of previously non-accelerated matured amounts that had become due prior to the filing of the Chapter 13 petition, §§ 1322(a), 1327, 1328(a)." Id. at 247. *Id.* at 987.

For similar holdings, see also, *In re Minick*, 63 B.R. 440 (Bankr.D.Dist.Col.1986) and *In re Spader*, 66 B.R. 618 (W.D.Mo. 1986).

In the instant proceeding, there is no prepetition acceleration of the debt, but rather the directive of the Chancery Court to pay a sum certain within a thirty day period to permit the debtors to regain title to their residential real property. The debtors propose, as noted hereinabove, to pay the full principal amount of the Shortridge indebtedness over a period of 48 months plus a single balloon payment at the conclusion of the plan to compensate Shortridge for all interest that will accrue on the principal indebtedness during the plan's life. Although this proposed treatment does not comply precisely with the requirements of 11 U.S.C. § 1325(a)(5)(B), it is reasonably close so that a minor modification of the debtors' proposal, i.e., the payment of interest through the course of the plan rather than a single balloon payment at the conclusion, would satisfy this test. In other words, if the debtors propose to pay Shortridge in full plus interest at a marketable rate, they can be permitted to make these payments over the life of the plan. In essence, the debtors are able to take advantage of the provisions of 11 U.S.C. § 1322(b)(3), which provides for the curing of defaults. According to the recognized authorities, cited hereinabove, this is not an impermissible modification of the rights of a creditor whose claim is secured exclusively by the debtors' principal residence.

The Court is of the opinion that the debtors should be given a period of ten days to amend their Chapter 13 plan in keeping with this Opinion. Should the debtors not elect to do so, the automatic stay shall be lifted to permit Shortridge to exercise all rights affordable under state law.

An Order will be entered consistent with this Opinion.