**In re Fay Avone BRAYLOCK.**

**Bankruptcy No. 89–42543.**

United States Bankruptcy Court,
N.D. Mississippi.

April 24, 1990.

Carter Dobbs, Jr., Amory, Miss., for Fay Braylock.

Michael D. Jonas, Aberdeen, Miss., for Credit Center.

OPINION

DAVID W. HOUSTON, III,
Bankruptcy Judge.

On consideration before the Court is the objection to confirmation filed by Credit Center of Amory, Inc., hereinafter referred to as Credit Center; both the debtor and Credit Center having appeared in open court with their respective attorneys of record; and the Court having heard and considered same, hereby finds as follows, to-wit:

I.

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (L), and (O).

II.

In her Chapter 13 plan, the debtor proposes to modify the secured claim of Credit Center pursuant to 11 U.S.C. § 1322(b)(2). Credit Center has objected to this modification contending that its claim is secured exclusively by a deed of trust encumbering the debtor's principal place of residence. The debtor, on the other hand, contends that the Credit Center claim is additionally secured by an interest in a credit life insurance policy, and, as such, is not within the protective exception found also in 11 U.S.C. § 1322(b)(2). The factual issues, which are largely undisputed, are recited as follows:

1. On January 19, 1989, evidencing a loan transaction entered into with Credit Center, the debtor executed a promissory note in the principal sum of $11,257.13, payable in 60 consecutive monthly installments beginning on March 10, 1989. The first installment was to be in the sum of $322.45 and the remaining fifty-nine installments were to be in the sum of $322.51.

Interest was to accrue at the rate of 23.32% per annum, and the final maturity date was February 10, 1984. The promissory note was secured by a security agreement and deed of trust encumbering the debtor's residential real property in the City of Amory, Monroe County, Mississippi.

2. Although the debtor was not required to do so, she elected to obtain credit life insurance in connection with the aforementioned loan. The policy premium in the sum of $780.47 was paid at the inception of the loan and was financed by Credit Center at the aforementioned interest rate of 23.32% per annum. There are certain features of this credit life insurance policy which are significant, to-wit:

a. The policy would be considered a "paid up" policy since the full premium was paid at the inception of coverage.

b. If the debtor defaulted under the terms of the loan, the insurance coverage would still remain in force through the full term of the policy, i.e., until February 10, 1994. As such, if the debtor died after defaulting under the loan, but before the term of the insurance policy had expired, the insurance coverage would be available to satisfy the defaulted loan.

c. If the debtor paid the loan in full prior to its scheduled maturity date, the debtor would be entitled to receive any refund of the unearned insurance premium. (The Court would observe that this result is entirely logical because, if the loan were paid in full, Credit Center would be repaid the insurance premium it had previously financed. If the debtor was not entitled to receive the unearned premium, the creditor would obviously be unjustly enriched.)

d. Although there was no testimony to this fact, the Court observes that ordinarily the lender would earn a commission or profit on the purchase of a credit life insurance policy by its borrower.

e. Although the security agreement did not specifically describe the credit life insurance policy, Credit Center was apparently designated the beneficiary of the policy.

3. The debtor's Chapter 13 plan reflected that Credit Center's claim was in the sum of $11,000.00, and that the collateral securing the claim had a value of $10,030.00. The debtor proposed a total pay out to Credit Center over 60 months in the sum of $13,387.00, at a rate of $223.12 per month. This payment proposal would extend the term of Credit Center's loan for almost one year beyond the original maturity date; but more significantly, it would decrease the rate of interest from 23.32% per annum to 11% per annum.

4. Credit Center's deed of trust is a first lien encumbering the debtor's residence. Although it was not executed to enable the debtor to acquire the residence, according to the testimony of Don Devinney, Credit Center's Northern District Supervisor, it was executed when the debtor's enabling loan was paid and satisfied.

## III.

Although several issues were discussed at the hearing on Credit Center's objection to confirmation, the most important issue that is presently before the Court is whether the credit life insurance policy constitutes "an additional security interest" and permits the debtor to modify Credit Center's secured claim regardless of the protective exception for residential lenders found in 11 U.S.C. § 1322(b)(2). This Code section provides the following:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(Hereinafter all Code sections will be considered as U.S. Code unless specifically noted otherwise.)

There are ancillary questions that always tend to arise in litigation involving § 1322(b)(2). One is whether this section should only be utilized to protect those lenders who make long term, first mort-

gage residential loans, as opposed to those lenders who obtain subordinate mortgages on residential property to secure short term consumer loans. The Court is aware of the comments appearing in the legislative history of this section, concerning its purported application primarily to long term residential lenders. On its face, however, the section is not ambiguous, and, as such, does not yield to the legislative history. Cf. *United Companies Financial Corp. v. Brantley*, 6 B.R. 178 (Bankr.N.D. Fla.1980). There is nothing expressly written in § 1322(b)(2) to even suggest that it is designed for a particular type loan. Until Congress amends § 1322(b)(2), this Court is reluctant to constrict its parameters as some Courts have recently done. *See, In Re Shaffer*, 84 B.R. 63 (Bankr.W.D.Va. 1988).

A second ancillary question is whether a fire and casualty insurance policy, covering the secured property and naming the lender as a beneficiary, additional insured, or loss payee, constitutes an additional security interest. Practically every deed of trust which encumbers improved real property contains a provision requiring the borrower to acquire and maintain insurance coverage to protect against fire and other casualty losses. To hold that this type insurance coverage constitutes an additional security interest would completely eviscerate the protective exception for residential lenders found in § 1322(b)(2). Congress would not have enacted a meaningless statute, knowing that practically all of the lenders for whom the protective exception was intended, would be eliminated from the protection solely because they routinely require fire and casualty insurance. As such, the logical, if not inescapable, conclusion is that a fire and casualty insurance policy, naming the lender as a beneficiary, additional insured, or loss payee, does not constitute an additional security interest.

By analogy, the fire and casualty insurance issue is helpful in resolving the present dispute. Credit life insurance only becomes available when an unfortunate event occurs, i.e., the death of the debtor. The proceeds of a fire and casualty insurance policy likewise only become available when an unfortunate event occurs, i.e., the destruction of the collateral security. The raison d'etre for these insurance policies is strikingly similar.

Although the Court is of the opinion that the interest rate charged by Credit Center on the principal loan, as well as, on the financed insurance premium is extremely burdensome, this is not a sufficient reason to conclude that the credit life insurance policy constitutes an additional security interest. Not only could the debtor have avoided entering into a loan transaction at such a vexatious interest rate, she also had the option of declining the credit life insurance coverage. The promissory note clearly indicates that credit life insurance was not required to obtain the loan. There was also no testimony offered by the debtor that she was coerced or forced into purchasing this policy.

The protective exception for residential lenders found in § 1322(b)(2) states, inter alia, that a debtor can modify the rights of a holder of a secured claim, "other than a claim secured only by a *security interest* in real property that is the debtor's principal residence." The Court seriously doubts that the voluntary election by a debtor to obtain a credit life insurance policy, even though the lender is designated the policy beneficiary, creates a "security interest." The credit life insurance policy is not described in the security agreement, nor is there any document that has been presented to this Court that attempts to perfect a lien in or an assignment of the policy.

Two cases cited by the debtor that are particularly on point are *In Re Stiles*, 74 B.R. 708 (Bankr.N.D.Ala.1987), and *In Re Wilson*, 91 B.R. 74 (Bankr.W.D.Mo.1988). *Wilson* can technically be distinguished from the instant proceeding because the Court there found the creditor to have an additional *security interest*, evidenced by the loan documentation, in the unearned or return premiums that were applicable to three different insurance policies, one of which was a credit life policy. Because this Court is of the opinion that the drafters of § 1322(b)(2) did not contemplate that a credit life insurance policy, naming the

creditor as the beneficiary, would be considered an additional security interest, this Court respectfully disagrees with the holding of *Stiles.* The Court in *Stiles,* like this Court, was perplexed with the exorbitant interest rate being charged by the creditor on the loan, as well as, to finance the credit life policy premium. This Court, however, is not persuaded that one optional credit life insurance policy, where the unearned premium is refundable to the debtor and where the proceeds of which would only become available on the debtor's death, is an additional security interest which negates the protective exception found in § 1322(b)(2). Therefore, the debtor will not be permitted to modify Credit Center's secured claim.

### IV.

Although Credit Center's secured claim may not be modified as set forth hereinabove, the debtor may still cure her default as to said claim pursuant to § 1322(b)(3). As such, the debtor will be permitted to pay the full amount of Credit Center's claim at the contract interest rate, amortized over the 60 month term of her Chapter 13 plan. Although this may appear to be a modification of Credit Center's claim, in a bankruptcy context, it is not. For a discussion of the distinction between curing defaults under § 1322(b)(3) and modification of claims pursuant to § 1322(b)(2), the Court looks to its earlier decision in *In Re Taylor,* 95 B.R. 48 (Bankr.N.D.Miss.1988). The conclusion in *Taylor* is supported by *In Re Taddeo,* 685 F.2d 24 (2nd Cir.1982); *Grubbs v. Houston First American Savings Association,* 730 F.2d 236 (5th Cir. 1984); *Matter of Clark,* 738 F.2d 869 (7th Cir.1984); *In Re Larkins,* 50 B.R. 984 (D.C. W.D.Ky.1985); *In Re Minick,* 63 B.R. 440 (Bankr.D.D.C.1986); and *In Re Spater,* 66 B.R. 618 (W.D.Mo.1986).

### V.

A separate order will be entered, consistent with this opinion, which will permit the debtor to have an opportunity to amend her Chapter 13 plan within 20 days of the date of the entry of said order. If the plan is not amended in keeping with this opinion, a separate order denying confirmation shall be entered and considered final, subject to appeal pursuant to 28 U.S.C. § 158.